THE GEORGIA RAILROAD vs. OLDS.

1. Where grounds of a motion for a new trial consist of general allegations of error in long extracts taken from the charge of the court, each embracing several principles or several different views or modifications of the same principle, without specifying the errors alleged to exist in said charges, and the bill of exceptions assigns error on the refusal of the new trial, this is not such a specification of the decision complained of and the error alleged to exist therein as is contemplated by the statute.

2. Where a person called for a ticket between two named points on a railroad, paid therefor, and received from the agent a ticket which was of a complicated character and not easily understood by persons unfamiliar with its use, and having started on his journey on board the passenger train of the railroad, was ejected by the conductor before reaching his destination, on the ground that the ticket which he had did not entitle him to ride between those points, but in an opposite direction from his starting point, he was entitled to recover damages therefor. And if such ejection was accompanied by circumstances of aggravation, such as the use of terms of insult and villification by the conductor, the refusal to put him off when the mistake was first discovered, but carrying him to the next station, from which point he had to proceed on foot, although old and lame, and his expulsion in the presence of others, he would be entitled to recover exemplary damages; and a verdict finding for the plaintiff the sum of $1,000 was not so excessive as to require the grant of a new trial.

(a.) The plaintiff had a right, under his contract, to be on the cars and to ride the distance between the points the company engaged to carry him. He was entitled to proper evidence of the contract made with it, and his failure to receive it was no fault of his, but of the agent issuing the ticket, and the company had no right to eject him from the cars because of the want of such evidence. As to these matters, the agent and conductor were each the *alter ego* of the company.

3. The plea of accord and satisfaction, on the ground that the money paid by the plaintiff for the ticket sold to him had been returned to him, was of no avail, there being no evidence that, in receiving the money, he intended to settle the wrongs done him.

(a.) This question, as well as all others made by the facts, was fairly, fully and impartially submitted to the jury by the able and lucid charge in which this court is unable to find any error.

November 23, 1886.

Practice in Supreme Court. Railroads. Damages. Negligence. Contracts. Before Judge RICHARD H. CLARK. Dekalb Superior Court. March Term, 1886.

Olds brought suit against the Georgia Railroad to recover damages for illegally ejecting him from a train. A verdict in his favor for $1,000 was recovered. The defendant moved for a new trial, on the following among other grounds:

(1.) Because the verdict was contrary to law and evidence, and was excessive.

(2.) Because the court erred in charging the jury as follows: "If you believe from the evidence that the ticket that this plaintiff applied for and intended to buy was a ticket to take him from Stone Mountain to Lithonia and return, and that, instead of that, he was given by the agent a ticket from Stone Mountain to Atlanta and back; and that Olds, the plaintiff, believed that the ticket entitled him to ride to Lithonia—I say, if you believe that; and that he got on the cars to go to Lithonia with such a ticket, and that, when the conductor came to him, he produced that ticket, and if the conductor objected to that ticket, and he informed the conductor that he believed the ticket to be one that would take him to Lithonia; and you should believe, moreover, that the ride to Lithonia did not exceed the number of miles of a ticket ridden on from Stone Mountain to Atlanta and back, if he had taken that direction; then I charge you the law to be, that the conductor had no right, under such circumstances, to put this man off, if he had paid for rides for so many miles, no matter in what direction, and had so informed the conductor, and at the time he put him off, he had not exhausted the number of miles that it called for. That is my view of the law as to the rights of this passenger on this ticket; provided, you believe, of course, that the ticket was of the nature I have explained to you—based, of course, upon what you may believe from the evidence."

3. Because the court erred in making the following charge to the jury: "The defendant has pleaded what is called in law accord and satisfaction,—that this plaintiff has had compensation for a violation of this contract. The plea is founded upon the idea that the plaintiff's case goes entirely upon a contract, the contract being that he bought a ticket to ride a certain distance ; that he was not permitted to ride with that ticket; and that they put him off; and that, therefore, he having the right only to sue upon

the contract, and having got his money back, he is not
entitled to recover anything, because that much has been
settled.   As you have already perceived, from the law I
have given you in charge (if you understood me), that is
not my understanding of the law applicable to this case,
My understanding of the law applicable to this case
is, that this man, under this form of action, and from this
evidence—if you should believe from the evidence that it
warrants a verdict in his favor—is entitled to recover for
being put off this car, under the rules and regulations
I have given you.   If you believe from the evidence that
he got his money back, the money he got back is only
what he paid out, and it settles his right of action for a
simple violation of the contract in not permitting him to
ride the distance on the road he had contracted for; that,
of course, is settled; but this part—the part where he says
they not only made this contract with him, but, under that
contract, they took advantage of it to commit a wrong or
tort; and according to my view of the law, the plaintiff
has the right to bring that, notwithstanding he may have
got his money back that he paid for his ticket."

The motion was overruled, and the defendant excepted.

Jos. B. Cumming; Candler, Thomson & Candler, for
plaintiff in error, cited : Hutch. Car. §§568, 574, 575 ; 6 Am.
and Eng. R. R. Cas. 322 ; 9 *Id.* 348 ; 18 *Id.* 248, 346 ; 135
Mass. 407 ; 56 N. Y. 295 ; 37 Mich. 342 ; 68 Ill. 499 ; 29 O.
St. 214 ; Rorer R. Rs. 971 ; 67 Me. 163 (s. c. 16 Am. R.
339); 26 O. St. 580 (s. c. 13 Am. R. 387); 51 N. Y. 100
(s. c. 4 Am. R. 423) ; 51 Cal. 425 (s. c. 12 Am. R. 222) ;
47 Iowa, 82 (s. c. 17 Am. R. 461); 4 Zab. 438 ; 11 Metc.
121; 3 Am. R. 430; 71 Penn. St. 432 (s. c. 3 Am. R. 435).

Harrison & Peeples; J. R. Gray, for defendants, cited:
Hutch. Car. §§595, 596, 574; 63 *Ga.* 224, 296 ; 75 *Id.* 51;
88 Ind. 381 ; Code, §§2067, 2082, 3066, 3067; 73 *Ga.* 251,
149, 596 ; 58 *Id.* 111, 216, 461 ; 72 *Id.* 292, 896 ; 67 *Id.* 218,

306; 70 *Id.* 378, 598 ; 28 Am. R. 442 ; 69 *Ga.* 13, 226, 246 ; 76 *Id.* 770; 48 *Id.* 550 ; 55 *Id.* 44, 498 ; 68 *Id.* 185 ; 61 *Id.* 131 ; 60 *Id.* 404 ; 65 *Id.* 482 ; 51 *Id.* 646.

HALL, Justice.

This was an action to recover damages from the defendant, the Georgia Railroad and Banking Company, for unlawfully and wrongfully expelling plaintiff from its cars, on which he was riding as a passenger, and for abusing and maltreating him through its agents and servants in effecting his expulsion. The jury, on the trial, found a verdict awarding him one thousand dollars damages. The defendant made a motion to set the verdict aside, and sought to obtain a new trial upon the several grounds taken in its said motion, which was refused by the court ; it excepted to the judgment rendered thereon and brought the case here by writ of error.

1. None of the special grounds, all of which are set forth in the amended motion, can, with due regard to the statute and the various decisions of this court, be considered on this bill of exceptions; they consist entirely of general allegations of error in lengthy extracts taken from the charge of the court, each embracing several principles or several different views or modifications of the same principle; and while the decisions complained of are plainly specified, yet there is no specification of the errors alleged to exist therein. The terms of the statute as to this requirement are mandatory. "Such bill of exceptions shall specify plainly the decision complained of, and the alleged error, and shall be signed by the party, his attorney or solicitor." Code, §4251. The failure to specify the error alleged would be no more of a compliance with its terms than would like failure to specify the decision complained of, or for the party or his counsel to sign the same ; each of these things is essential to the validity of the bill of exceptions and the writ of error founded thereon, so far

as relates to the particular decision of which complaint is made, and the reason for the observance of such imperative direction is obvious. It was never contemplated by the framers of this wise and liberal act that the party complaining should have it in his power to withhold from his opponent the real grounds of objection to any decision and spring it on him on the final hearing, when he would have no opportunity of making preparation to meet and answer it. He should know what he has to answer, in order that he may not be condemned to loss without a hearing, or at least without being notified of what he is required to respond to. From the character of the eminent counsel engaged in this case, we ought, perhaps, to attribute this failure rather to inability in any one to perceive and point out errors in these particular charges than to inattention or forgetfulness of the rule, and in the view which we shall be compelled to take of the case, we feel less reluctance in making this ruling than we should on ordinary occasions, where a rigid enforcement of it might deprive parties of clear and unquestioned rights and make them suffer from errors of which they failed to take advantage in the only manner pointed out by the law.

2. From our previously expressed views of the law applicable to such wrongs as those now undergoing investigation, fortified as these views have been by subsequent reflection and further and fuller investigation, we are satisfied that this plaintiff made such a case as not only authorized but demanded a recovery of some amount of damages, and we think that under his testimony, the jury, if they believed him, and this they had a right to do in preference to the defendant's witnesses, did not, by the amount of their finding, evince bias in his favor or prejudice against the defendant, or that they either misapprehended or disregarded the explicit and careful instructions given them by the court; in short, that the finding was not excessive, if they saw proper to adopt, as they unquestionably could without impropriety, the plaintiff's theory.

The facts necessary to the determination of these several questions are, that the plaintiff applied to defendant, agent at Stone Mountain, for a ticket to carry him to Lithonia and return; that such a ticket was paid for and, as he supposed, handed him, and on this he boarded the cars, and when he had gone a short distance from the station where he got on the train, the conductor came around to take up tickets, and upon presenting his, it was discovered that he was riding on a ticket from Atlanta to Stone Mountain, which would have entitled the holder to return from Stone Mountain to Atlanta; the conductor thereupon demanded of him his fare and informed him, upon his refusal to pay, that he must leave the train. The plaintiff then requested to be put off at that point, which he says was not exceeding half a mile from the mountain, but according to the conductor, it was two and half a miles from the mountain. He was not put off, but carried on to Redan, a half-way station between Stone Mountain and Lithonia, where there was a turn-out; there was some altercation here between the conductor and him, and he was here ejected from the cars and compelled to pursue his journey on foot; he was an old man, and quite lame from a wound in the foot which he received in the late war; the day was hot and oppressive, and to reach his destination he was compelled to walk in great pain the distance of five miles; he had to purchase a return ticket from Lithonia to Stone Mountain. So far, there is no dispute as to the facts. The plaintiff showed that the ticket he held had been punched by the conductor before it was returned to him. On his return next day to Stone Mountain, he presented this ticket to the agent there and informed him of the mistake that had been made, when the agent promptly admitted it and returned the money paid for it. There was conflict among the witnesses about punching the ticket by a conductor and between the agent and plaintiff, although he redeemed it, and about its being the same ticket sold by him; the plaintiff's account of the matter was corroborated

by other witnesses. This was a very complicated ticket, not easily understood by persons unfamiliar with its use. By some of the railroad men, it was called a "duplex" ticket, by others a ticket between stations, and by the plain- tiff and his counsel a "patent ticket." The point of de- parture and of destination was indicated by punching cer- tain stations marked on its face, as well as the direction in which it was used. The plaintiff, before leaving the train, according to his account, and when he left it, was grossly insulted and shockingly villified by the conductor, roundly cursed and accused of being an imposter and, in the cur- rent slang of the day, "*a dead beat*," trying to steal a ride, and compelled to alight under circumstances calculated to give the passengers and others who witnessed the trans- action a very bad impression of him as a man, and to wound and mortify him deeply. All this contumely and abuse were denied by the conductor and his assistants.

It is undeniable that the plaintiff, under his contract, had a perfect right to be on the cars and to ride the dis- tance between the points the company engaged to carry him; he was entitled to proper evidence of the contract he made with them; it was no fault of his that he did not receive it, but of the agent issuing the ticket, and the com- pany had no right to eject him from the cars because of the want of this evidence; so far as respects these matters, the agent and the conductor was each the *alter ego* of the company—in fact, the company itself. The plaintiff was wronged by the expulsion, and was entitled to his action and to recover. It did not concern him that the conductor was carrying out the reasonable regulations of the company, and that his action was such as they were in reason and justice bound to approve in removing him in a decorous and proper manner from the cars; his rights were certainly violated, and they failed in the performance of their duty to him by breaking their contract; had there been nothing more than a breach of this contract, and a violation of the duty growing out of it in consequence of the mistake of the

agent in selling the ticket, while this could not have de-
feated the action, it would have had great influence in
mitigating the damages. But when to this are added other
wrongs and violations of rights and duties; when he was
insulted and villified by their agents while under their pro-
tection; when they failed to exercise the " extraordinary
diligence " which the law requires at their hands for his
safety and comfort,—surely these are circumstances entit-
ling him to compensatory damages, as well for wounded
feeling as for the inconvenience, pain and suffering for this
wanton and cruel violation of his rights by the conductor
and his assistants; and if the jury believed these facts, they
were authorized, in addition, to give vindictive damages
to deter him from the repetition of similar offences.

These positions are sanctioned by many cases, not only
of our own but other courts. *The City and Suburban
Rwy. vs. Brauss*, 70 *Ga.* 368; *Atlanta & W. P. R. R. vs.
Condor*, October term, 1885 (75 *Ga.* 51); Lake Erie &
Western Rwy. Co. *vs.* Fix, 88 Ind. R. 381, 388, 389; Phil-
adelphia, Wilmington & Baltimore R. R. Co. *vs.* Larken,
47 Md. R. 155 (28 Am. R. 442); Hutchinson on Carriers,
§§595, 596, 574, and the numerous cases and sections of our
own code cited on the full and ample brief of counsel for
the plaintiff in the action.

3. The plea of accord and satisfaction of the company,
founded on the return of the money paid for the ticket
sold the plaintiff, was not strenuously urged on the argu-
ment before this court, and had it been, we are of opinion
that it would have proved unavailable. There is not the
slightest evidence that the plaintiff either proposed or in-
tended, by the receipt of this money, for the payment of
which he got no consideration, at least not that for which
he bargained, to settle the wrongs he has received from
this company through its agents. This question, as well
as all others made by the facts, was fairly, fully and im-
partially submitted to the jury by the able and lucid

charge of the Hon. Richard H. Clark, in which we are unable to find any error, after the most careful consideration and close scrutiny which we have given it.

Judgment affirmed.