## No. 2507.

## THE ST. LOUIS, ARKANSAS & TEXAS RAILWAY COMPANY *v.* N. A. C. MACKIE.

1. HEARSAY TESTIMONY.—The improper admission of hearsay testimony is not ground for reversal on appeal when the same fact was established by other testimony not objected to.

2. MISTAKE—NEGLIGENCE.—Appellee bought and paid for first class tickets for himself and family. The agent delivered second class—appellee not noticing the error. The conductors refused admission to first class cars except upon payment of the additional price. This was not paid

and appellee and family were carried in second class cars. *Held,* that appel'ee, who was p'aintiff below, was entitled to recover.

3. SAME—MEASURE OF DAMAGES —It was not the duty of the passenger holding second class tickets, having bought and paid for first class, to pay the additional price to entitle him to recover for damages to the full extent of the injury suffered from the violation of the contract.

4. DAMAGES.—A party whose duty it is to perform a service necessary to the fulfilment of his contract, and to prevent injury from its violation, is expected to perform such duty, and he can not complain that extra compensation was refused on his demand conditioned to his full performance of such duty.

5. CARRIER OF PASSENGERS.—Passengers in a second class car are entitled to protection against the acts of fellow passengers to the extent that good conduct must be exacted on the part of persons inclined to use of vulgar and offensive language and conduct.

APPEAL from Henderson. Tried below before the Hon. F. A. Williams.

Mackie sued appellant for ten thousand and fifty dollars damages, of which sum two thousand two hundred and fifty dollars was claimed as damages to plaintiff N. A. C. Mackie, and two thousand five hundred dollars was claimed as damages to plaintiff's wife, Sallie Mackie, and five thousand dollars was claimed as exemplary damages. Appellee alleged that on February 7, 1887, he paid to appellant's agent at Athens, Texas, forty-four dollars and ninety cents for two first class tickets over appellant's road and connecting lines from Athens to Nashville, Tennessee. That on said date appellee entered appellant's first class passenger coach, together with his wife, Sallie Mackie, and two children under two years of age, as passengers, and presented said two tickets to conductor of appellant. That said two tickets were, by negligent act of appellant's agent, punched as second class tickets instead of first-class, and that plaintiff and his wife and two children were, in consequence thereof, forced and compelled by all conductors on said route to ride in second class coaches. That in consequence thereof they were greatly humiliated, damaged and suffered in body and mind; that said second class coaches were foul with smoke and dirt and filth of every description, and filled with negroes and low down whites, who smoked and drank whisky and used violent, profane and obscene language in presence of plaintiff and his family, by reason of which appellee's wife and children became sick, and he had to stop

three days at Nashville and incur great expense and doctor's bills, for which expense and sickness appellee was damaged in the sum of fifty dollars, included in said sum of two thousand five hundred and fifty dollars claimed as damages to plaintiff.

Appellant pleaded general and special demurrers, and a general denial and plea of not guilty, and specially answered that appellee and his wife, if damaged, contributed to their injuries by receiving second class tickets instead of first class tickets; that the tickets they received showed clearly on their face, at the time of purchase, that they were second class tickets; and second, that after the damage complained of became known to them, they were offered by defendant the privilege of avoiding said damage, and being allowed to travel in first class coaches for difference in fare, amounting to only fifteen dollars more; and negligently refused to pay same, and contributed by their own wrong to their said damage, suffering said insults from rude passengers and tobacco smoke, and sickness, etc., to their children, and they ought not to recover. A trial on said issues before a jury resulted in a judgment for appellee against appellant for seventeen dollars as damages to himself, and five hundred dollars for damage to Sallie Mackie, his wife, for damages "physical and mental."

Further facts are in the opinion.

*Clark, Dyer & Bolinger,* for appellant: The statements or declarations of an agent, although made in the scope of his agency, are hearsay, and inadmissible to bind his principal, unless made during the pendency of the transaction to which they relate. (McAlpin v. Cassiday, 17 Texas, 449; Bingham v. Carr, 21 Texas, 142; Tuttle v. Turner, 28 Texas, 759; Wheelock v. Wright, 38 Texas, 496; Hinson v. Walker, 65 Texas, 103; S. Jacobs, Bernheim & Co. v. Cumby & James, 1 Willson & White's Dig., sec. 586; 1 Greenl. Ev. secs. 113, 114.)

2.  Notwithstanding appellant's alleged wrong and breach of contract, it was plaintiff's legal duty to use due diligence to prevent loss thereby, and he was not entitled to compensation, either for himself or wife for injurious consequences from such breach, so far as he had the information, time and opportunity to prevent; and this issue, though raised by the pleadings and sustained by the evidence, the court refused to submit to the

jury. (Brandon v. Manufacturing Co., 51 Texas, 121; Railway v. Richards, 59 Texas, 373; Railroad v. Young, 60 Texas, 201; Jones v. George, 61 Texas, 345–362; Railway v. Cole, 66 Texas, 562; Field on Damages, secs. 21, 130; 1 Thompson on Negligence, 169.)

*Richardson & Watkins*, for appellee: 1. The court is not justified in charging that any act constitutes contributory negligence unless such act be negligence per se, and plaintiff, though contributing, would not be disentitled to recover if defendant, by ordinary care, could have avoided the consequences of plaintiff's neglect. (Railway v. Moore, 69 Texas, 157; Railroad v. Gasscamp, 69 Texas, 545; Railroad v. Pollard, 2 Ct. App., sec. 484; Pierce on Railroads, 325; Field on Dam., 170; Cooley on Torts, 675.)

2. Neither a trespass nor its continuance will be presumed, and the appellee was not called on to exercise any care to prevent injuries of the character complained of. (1 Suth. on Dam., 152, notes 153–199; Whittaker's Smith on Neg., 419.)

3. Shame, mortification, anxiety and mental pain and distress, as well as physical discomfort, are proper grounds for damages, and can be inferred from the surrounding circumstances, as well as other injuries. (R'y v. Gilbert, 64 Texas, 536; Stuart v. W. U. T. Co., 66 Texas, 580; Johnson v. R'y Co., 2 Ct. App., Civil Cases, secs. 190, 218, 475, 484; R'y v. Hurst, 36 Miss., 661; 3 Suth. on Dam., 259, 260; 2 Greenl. on Ev., 267.)

STAYTON, CHIEF JUSTICE. Appellee desiring, with his wife and two children, to go from Athens, Texas, to some place in North Carolina, applied to the appellant's agent at Athens, Texas, for through tickets to Nashville, Tennessee. Tickets were issued to him, for which he paid the price charged by the company for first class tickets, but by mistake or otherwise tickets were delivered to him which entitled him and family to travel only in a second class car.

He did not examine the tickets when they were delivered to him, but on the arrival of the train, with his family entered a first class car on the appellant's railway. After the train had traveled but a few miles the conductor called for his tickets, which were produced, when the conductor required him and family to leave the first class car and take seats in a second class car; and, while no force was used by the conductor in

bringing this about, it was done under circumstances calcu-lated to humiliate and mortify the feelings of the appellee and his wife, who from the record appear to have been people of refinement and intelligence.

At the time this was was done, and at all other times during the trip, when on any of the roads over which the tickets took the appellee and his family, the appellee was refused passage in a first-class car, he explained to the conductors the circum-stances under which the second class tickets were delivered to him. The conductors offered to permit the appellee and his family to travel in a first class car if he would pay one cent per mile on each ticket in addition to what he paid for the tickets. This he refused to do, as appears from his evidence, because he had paid for the tickets a sum that entitled him to first-class tickets, but it is rendered probable by the evidence that he had not money sufficient to pay this demand and pay the other necessary expenses of himself and family until they would reach their destination.

It is alleged that the second class coaches in which the ap-pellee and his family were compelled to travel from Athens, Texas, to Nashville, Tennessee, were uncomfortable, foul with smoke, dirt and filth; and filled with negroes and coarse whites, who smoked tobacco, drank whisky and used violent, profane and obscene language in the presence of the appellee and his family, in consequence of which, it is alleged, the appellee and his family were greatly humiliated and injured physically and mentally.

It is further alleged that the misconduct of the persons in the cars was open, and that no effort on the part of the officers in charge of trains was made to prevent it. It was further al-leged that tobacco smoke caused nausea to appellee's wife. The matters thus alleged are proved in great detail.

There was a verdict and judgment for seventeen dollars for injuries to the appellee, and for five hundred dollars for in-juries to his wife.

On the trial a witness, over the objection of appellant, was permitted to state that a few days after the tickets were sold to appellee he had a conversation with the agent of the appel-lant at Athens, Texas, in which the latter told him that the price of first class tickets from Athens, Texas, to Nashville, Tennessee was twenty-two dollars and forty-five cents. This was the price paid by appellee for each ticket delivered to him,

and the objection to the evidence was that it was not res gestae, but hearsay, and therefore inadmissible.

It may be admitted that this objection ought to have been sustained, but if from the record it appears that the proof of the same fact sought to be thus established was made by other evidence admitted without objection and unrebutted, then this ruling furnishes no ground for reversal. The same witness, whose evidence, as above stated, was objected to, was permitted to state, without objection, that the appellant's agent at Athens told him "that there was but one price for tickets sold to Nashville, and that was twenty-two dollars and forty-five cents, and that they never sold any but first class tickets; that no second class tickets were ever sold to that point." "Chambers (the agent) showed me the stubs of the two tickets which were sold to Mackie and wife, and which they still had in the office, and the stubs showed that they were sold as first class tickets." The last part of this evidence was brought out by the appellant, and there is no conflict of evidence as to the price paid by appellee, nor as to the price of first class tickets. In this state of the record, if the court erred in admitting the evidence objected to—a matter we need not decide—the ruling was harmless, and furnishes no ground for reversal.

It is urged that, as the appellee might have procured seats in first class cars by the payment of seventeen dollars in addition to the full price for first class tickets, which he had already paid, his failure to do so relieves the appellant from liability. A defense of this character was pleaded, and the failure of the court below to submit it to the jury is assigned as error.

The case made by the pleadings and proof is: that appellee made a contract with appellant whereby the latter, for a consideration paid, agreed to transport the appellee and his family in first class cars, on its own and connecting lines from Athens, Texas, to Nashville, Tennessee, which was violated.

The violation of this contract entitled appellee to recover damages, and if it was the duty of appellee to have paid the additional sum demanded and thereby to have secured the accommodations and services for which he had contracted and paid, then, his failure to do so could not defeat his action, but would affect the measure of damages.

The charge asked would have made his failure to pay the additional sum demanded a defense to the entire action, if by its payment the appellee would have received the services and

accommodations he was entitled to receive without such addi-
tional payment. A charge leading to such a result was not
only misleading but clearly erroneous, and was properly re-
fused.

The rule invoked by the appellant has been applied in many
cases, and is wholesome in its operation in a case in which it is
applicable, but we are of the opinion that it ought not to be
applied in the case before us.

There is no question of negligence in this branch of the case,
the court having carefully submitted to the jury whether the
receipt of second class tickets by appellee, without examining
them, was the exercise of such care as a prudent man would
ordinarily have exercised under the circumstances existing
when they were received, and the only question is: does the
law under the facts of this case impose on a person situated as
was the appellee the duty of doing more than his contract re-
quires, as a condition on which he will be permitted to recover
damages naturally growing out of a violation of the contract
by the other party, who, at the time of its violation has the
means to comply with it and knowingly refuses to do so?

The appellant made a contract to transport or to cause to be
transported, in a first-class car, the appellee and his family
from one named place to another, and for this service received
in advance the compensation demanded. This contract was
made by an agent, who failed through mistake or otherwise
to give the written evidence of it, but it was nevertheless the
contract of the appellant, who is charged with knowledge of
all the terms of it. Knowing the terms of the contract through
another agent, it violated it, and, we may say, did so under
circumstances aggravating in their character. Under the reg-
ulations made by the appellant and other lines over which the
appellee had to pass, it may have been made the duty of con-
ductors to their companies to regard the tickets as the only
evidence of the contract to which they could look for the regu-
lation of their conduct, but the law affects the appellant with
knowledge of the real contracts made by its agents, and it
can not be permitted to shield itself from liability for the non
performance of a contract on the ground that it had made a
regulation which precluded its conductor from making any
inquiry as to the real contract made, or from carrying it out.
The making and enforcement of such a regulation rather ag-

gravates than excuses the violation of a contract, for this withdraws from agents operating trains the power to correct a mistake and comply with the contract actually made, although this might be easily done. But for such a regulation the conductor would probably, when informed of the mistake in the tickets, have, as he might have done, ascertained soon after the passage began what the real contract and consequent right of the appellee was.

It can not be heard to say that it was ignorant of the terms of the contract, of its violation or of the unauthorized demand made by its agent as a condition on which he would execute the contract. The duty of appellant was fixed by contract based on full consideration paid, and the law recognizes no means whereby it can be more firmly imposed or compliance with it made more imperative.

It has been said that the rule insisted upon "is simply one of good faith and fair dealing" (Gilbert v. Kennedy, 22 Mich., 132); and can it be true, under the facts of this case, that good faith and fair dealing required the appellee to pay a sum in addition to that paid and deemed by appellant a sufficient compensation for the services it had contracted to perform, in order to be entitled to have the contract complied with, or to have damages for any injury resulting from its breach? We think not.

It is not necessary in this case to undertake definitely to determine under what states of fact the rule insisted upon may have application; but we do feel authorized to hold, from an examination of the cases to which we have access, that a party whose duty it is to perform a service necessary to the fulfilment of his contract and to prevent injury to result from its violation, may in all cases be looked to to fulfil that duty when he has equal knowledge and opportunity; and that he can not be heard to urge, in defense of an action based on his own breach of contract and consequent violation of duty, either for the purpose of defeating the action or lessening the damages, that the injured party might have secured the performance of the contract and thereby have prevented or lessened the injury by paying to him an additional compensation to induce him to perform the duty which he had already been fully paid to perform. (1 Sutherland on Damages, 150.) This holding affirms the correctness of the action of the court below in refusing to give the instruction asked by the appellant.

It is urged that the evidence did not warrant the verdict for

damages for injuries to the wife of appellee, but we see no reason to doubt its sufficiency.

Had the appellee and his wife been entitled to passage only in a second class car, we do not understand that the appellant would not have been then compelled to exercise due care to protect them from discomforts resulting from the acts of other passengers, and not incident to the kind of cars used for passengers of that class, whether those discomforts were physical or mental.

A railway company can not subject passengers, even in a second class car, to noxious influences not necessarily nor ordinarily incident to such travel, but brought about by the wrongful acts of other passengers, which the company, by the exercise of proper care and due regard for the welfare of passengers, could prevent, without liability for injury resulting from such causes.

The record shows that the wife of appellee was compelled to ride in a car full of tobacco smoke, which caused to her nausea; that she was compelled to ride where she could not avoid hearing rough, profane and obscene language, and witness acts of violence and drunkenness.

These things carriers of passengers ought not to permit in vehicles in which they undertake to transport decent men, much less refined and delicate women; and if they do, when they could prevent them by the use of due care, they must respond in damages based on injuries, physical and mental, which, for their measure, must necessarily largely depend on the honest exercise of the judgment and discretion of the court or jury trying the cause.

In the case before us, however, the appellee and his wife were entitled to passage in first class cars. From a car of that class they were expelled by the conductor on appellant's train, wrongfully and in a manner calculated to humiliate and distress them. Thus were they compelled to take passage in cars in which the discomforts were greater than in the cars in which they were entitled to ride, and to suffer the unnecessary annoyances to which they seem to have been subjected.

We can not say that the evidence did not warrant the verdict and judgment, and the judgment will be affirmed.

*Affirmed.*

Opinion delivered October 19, 1888.