# Pullman Company *v.* Riley.

*Failure to Furnish Accommodation.*

(Decided Jan. 30, 1912.    Rehearing denied May 28, 1912.
59 South. 761.)

1. *Evidence; Common Knowledge; Judicial Knowledge.*—It is common knowledge that a ticket for railroad transportation or sleeping car accommodation is treated by most people as a mere symbol, and that they do not take time to read it.

2. *Carriers; Passengers; Tickets; Mistake.*—Where a passenger calls for a particular ticket and pays the fare demanded, he is entitled to the ticket for which he paid, and if by mistake the carrier's agent gives him the wrong ticket, the carrier is bound by the real contract made between the parties.

3. *Same.*—Where a passenger knows or has reason to believe that the ticket he receives is not the ticket for which he calls, and accepts the ticket, he cannot be heard afterwards to complain that he received an improper ticket.

4. *Same; Sleeping Car Accommodations; Ticket.*—When a passenger buys a right to a berth in a sleeping car, the ticket he receives is not a contract, but is little more than a symbol indicating to the agent of the company that the passenger is entitled to carriage on the car named in the ticket, and if the ticket is incorrect by reason of the fault of the selling agent, the company is bound by the contract really made.

5. *Same; Right of Passengers.*—Where a traveler entitled to purchase buys sleeping car accommodations in a particular sleeper, he becomes for the period covered by the contract, the owner of a special property right in that sleeper.

6. *Same; Duty to Public.*—A sleeping car company engaged in furnishing accommodations to the traveling public, is a public service corporation, and becomes liable in damages for a breach of its duty to a member of the public. it is bound to serve.

8. *Same; Breach of Contract; Pleading.*—Where the action was for a breach of a sleeping car companys contract to furnish accommodations in a particular car between certain points, a count alleging that defendant was operating a through sleeping car for the carriage of passengers between such points, but showed by other averments that no one was entitled to such accommodations except the holders of a certain form of ticket over a named railroad, who had also bought and paid for sleeping car accommodations on such car, did not charge that the sleeping car company was a common carrier of passengers, but only that those rightfully occupying the car under contract with defendant were entitled to occupy and enjoy the comforts thereof as passengers on the particular train of the railroad specified.

[Pullman Company v. Riley.]

9. *Same; Duty to Passengers.*—A sleeping car company owes a duty to passengers rightfully thereon, to see that its servants treat such passengers with due consideration, and that they be not subjected to insult by them.

10. *Same; Tickets; Mistake.*—While the passenger's ticket is the sole evidence of the passenger's contract, as between the conductor and the passenger, yet, the company is charged with knowledge of the real contract made by its selling agent, and if by mistake of the agent the ticket does not evidence the contract actually made, the company cannot shield itself from liability for non-performance of the contract on the ground that it had a regulation which precluded its conductors from making inquiries as to the real contract, or from carrying it out.

11. *Same; Contract.*—Where plaintiff purchased a ticket from Birmingham to Chicago, for a particular date and train, and also asked defendant's agent for Pullman accommodations good to leave on such train, she was not necessarily entitled to transportation in a through sleeper attached to said train; the carrier's contract was performed when it furnished her with a seat in the through sleeper in the daytime and a berth in another sleeper attached to the train at an intermediate point, and run through to destination in the nighttime.

12. *Same; Contract; Performance; Breach.*—Where the proof showed that plaintiff contracted only for Pullman accommodations good to leave on a particular train, and the complaint alleged that she had purchased Pullman accommodations on a particular train between Birmingham and Chicago in a through sleeper, and that defendant's agents wrongfully required her to leave the car at Nashville and complete her journey in another sleeper. the variance was fatal.

13. *Same.*—Where plaintiff purchased sleeping car accommodations between Birmingham and Chicago on a particular train, but not in a particular sleeper, and at an intermediate point between destinations, plaintiff was required to leave the train on which she bought passage, and accept accommodations in another sleeper attached to a separate train made up and run as a separate section of the train on which she had previously been a passenger, there was a breach of the contract of carriage.

14. *Same; Contract.*—Where plaintiff contracted for sleeping car accommodations between certain points on a particular train, but not for space in a sleeping car in which her relatives also purchased accommodations, she was not entitled to recover damages because of a subsequent separation from them on account of being required to accept a berth in a car transported on a second section of the same train.

15. *Same; Damages.*—Where both trains arrived at destination at the same time, plaintiff was not entitled to recover damages for a breach of contract, where she purchased sleeping car accommodations from B. to C. on a particular train, and was required to accept a berth in a different car at an intervening point.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Action by Lida Riley against the Pullman Company for failure to transport her according to contract. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The complaint was as follows: "Plaintiff claims of the defendant $2,000 as damages for that, heretofore, to-wit, on the 14th day of August, 1909, defendant was operating a through sleeping car for the carriage of passengers from Birmingham, Ala., to Chicago, Ill., and agreed with plaintiff for hire and reward paid by plaintiff to permit plaintiff to occupy said car, and to enjoy the comforts thereof during a trip of plaintiff from Birmingham to Chicago, provided that plaintiff have or procure railroad transportation for herself for said trip, and plaintiff did have or procure said railroad transportation, and it became and was the duty of the defendant to permit plaintiff to occupy said through sleeping car from Birmingham, Ala., to Chicago, Ill., but notwithstanding said duty defendant's servants or agents in charge or control of said through sleeping car did at Nashville, Tenn., a point far short of plaintiff's destination, to-wit, Chicago, wrongfully cause plaintiff to leave said through sleeping car and in and about doing so spoke rudely to plaintiff, and as a proximate consequence of the said wrong of said servant or agent plaintiff was separated from those with whom she was traveling in said car, and from her friends and relatives, and was caused to travel alone or with strangers a great distance, to-wit, from said Nashville to said Chicago, and plaintiff was greatly inconvenienced and annoyed and humiliated, and suffered great mental and physical pain, and anguish, and was put to great and extra inconvenience, in or about caring for herself, and providing herself with accommodations on said trip from said Nashville to said Chicago, and plaintiff was de-

prived of the use of said through sleeping car from said Nashville to said Chicago." (3) "Plaintiff claims of defendant $2,000 as damages for that heretofore, to wit, on the 14th day of August, 1909, defendant was in charge of a sleeping car for the carriage of passengers on a train operated by the Louisville & Nashville Railroad Company, from Birmingham, Ala., to or beyond Nashville, Tenn.; that on said day plaintiff was the passenger of said Louisville & Nashville Railroad Company which was a common carrier of passengers, and for hire and reward paid this defendant was occupying said Pullman on said train, and in consideration of said amount paid this defendant was enjoying the privilege of said Pullman car from Birmingham to Nashville, and defendant for said hire and reward had extended the privilege to this plaintiff of occupying said Pullman car to said Nashville, and of enjoying said privileges. It became and was the duty of said defendant to treat the plaintiff courteously, and to have its servants act towards her with common politness, but, notwithstanding said duty, defendant's servant or agent on said train, acting within the line and scope of his authority as such, wrongfully spoke with great rudeness to plaintiff, and as a proximate consequence thereof plaintiff suffered the injuries and damages set out in the first count." The demurrers to the first count were that it stated no cause of action; that the duty averred is naught but a conclusion; that it is not made to appear that plaintiff was injured in person, reputation, or estate by reason of any breach of duty or contract on the part of the defendant. It is not made to appear that this defendant was guilty of actionable negligence in and about the failure of plaintiff to secure a stateroom—failure to aver that the alleged servant or agent was acting within the

line and scope of his authority. It is not averred that this defendant failed to perform any legal duty it owed the plaintiff. It appears on the face of the complaint that the acts of said alleged agent or servant were not done or performed within the line or scope of his authority. The same demurrers were filed to the third count.

CAMPBELL & JOHNSTON, for appellant. The court erred in overruling demurrers to the 1st and 3rd counts. —*McGhee v. Reynolds*, 117 Ala. 415. The court should have given the affirmative charge with hypothesis as to the first count.—*Calhoun v. P. P. P. Co.*, 149 Fed. 546; S. C. 86 C. C. A. 387; *Duvall v. Pullman Co.*, 62 Fed. 265. The ticket is the contract between carrier and passenger, and the conductor and other agents are justified in acting in accordance with the terms thereof. —*McGee v. Reynolds, supra;* 6 L. R. A. (N. S.) 899; 66 Atl. 403; 71 Pac. 526; 70 NE. 56; 111 Ill. App. 142; 143 U. S. 60. There was a variance in the contract proven and that alleged.—*McGee v. Reynolds, supra; Smith v. Pullman Co.*, 119 S. W. 1072. It is well settled that sleeping car companies are not held to the responsibilities of common carriers.—*Pullman Co. v. Adams*, 120 Ala. 581, and authorities supra. The 12th charge should have been given.—Authorities supra. The court erred in giving the 3rd charge requested by plaintiff. —Authorities supra. The 15th charge given for plaintiff was erroneous.—76 S. W. 181; 71 S. W. 730; 39 S. E. 762; 1 C. C. A. 544. On application for rehearing and modification, counsel insist that the court erred in failing to distinguish between the duties and functions of a sleeping car company, and the duties and functions of common carriers of passengers, and also confuses or misunderstands the facts as to the changing of trains, and in support thereof cite the above authorities.

HARSH, BEDDOW & FITTS, for appellee.   Under the
facts the defendant breached its contract and is liable
in damages.—*L. & N. v. Quinn*, 146 Ala. 330.   The facts
alleged in the first count entitled plaintiff to damages.
—*Pullman Co. v. Lutz*, 154 Ala. 518; 106 Ill. 222.   For
a general discussion of the liability of Pullman or sleep-
ing cars, see 26 Am. St. Rep. 325 and note.   The de-
fendant is unquestionably liable for all acts of rude-
ness done or caused by its agents.—*L. & N. v. Whitman*,
79 Ala. 328.   The ticket was a mere symbol or evidence
of the contract, and if it was wrongfully made out, it
was the fault of the carrier's agent, and the company
had no right to eject the passenger short of destina-
tion, or compel her to take quarters elsewhere and leave
her relatives and friends.—*Morningstar v. L. & N.*, 135
Ala. 251; *A. G. S. v. Heddleston*, 82 Ala. 219.   The duty
of the carrier was not performed until it furnished
plaintiff continuous passage, comforts and conveniences
to the point of destination.—*B. R. L. & P. Co. v. Seaborn*,
168 Ala. 658.   Under these authorities, it will be seen
that the court committed no error in any of its rulings.

DE GRAFFENRIED, J.—It is a matter of common
knowledge that a ticket for either railroad transporta-
tion or for sleeping car accommodations is treated by
the average man as a mere "symbol," and that the aver-
age man or woman, when such a ticket is purchased of
a ticket agent, does not take the time to read it.

When, therefore, a passenger calls for a particular
ticket and pays the fare demanded by the ticket agent,
he is entitled to the ticket for which he paid, and if the
ticket agent by mistake gives him the wrong ticket the
company by whose agent the ticket is sold is bound by
the real contract made between the parties.   "It is no
fault of a passenger that the agent gave him a differ-

ent ticket from the one he bought and paid for, and the company had no right to require the plaintiff to leave its trains because the agent had given him a ticket which he did not call for and did not intend to buy."—*Georgia Railroad Co. v. Olds,* 77 Ga. 673.

"The traveler sees and knows only the local ticket agent, the conductor, and, perhaps, the baggagemaster. To him they present the embodiment of the corporation, to whom he must look for protection and, to a limited extent, instruction. He is not presumed to know the rules and regulations of the company; for, of necessity, they must be many, and, to the uninformed, intricate. His purpose is travel or transportation to a given point, and the railroad officials must supply the details. He has neither the required knowledge nor power to furnish these. If travel be his aim, he approaches the ticket agent, informing him of his destination. Paying for the ticket the price demanded under the tariff of charges, he has done all required of him to secure his right of transit over the railway to the point or station over which he requested a ticket."—*S. A. N. A. R. Co. v. Huffman,* 76 Ala. 492, 52 Am. Rep. 349; *L. & N. R. Co. v. Hine,* 121 Ala. 234, 25 South. 857.

Instances where the agent selling tickets for railroad transportation or sleeping car accommodations makes a mistake are extremely rare, and the average traveler, knowing but little of the details touching such matters, accepts the ticket handed him by the agent, without investigation or question.

Of course, if the traveler, when he accepts the ticket, knows or has reason to believe that the ticket handed him by the agent is *not* the ticket for which he called, he will afterwards be heard to complain that he received an improper ticket.

1.   Without regard to the question as to whether or
not sleeping car companies are to be treated as com-
mon carriers, the doctrine quoted from the above-cited
cases of *Georgia Railroad Co. c. Olds, S. & N. A. R. Co.
v. Huffman,* and *L. & N. R. Co. v. Hine,* is applicable to
them in so far as the sale of sleeping car accommoda-
tions is concerned.   "When a person buys the right to
the use of a berth in a sleeping car, it is entirely clear
that the ticket which he receives is not intended to and
does not express all the terms of the contract into which
he enters.   Such ticket, like the ordinary railroad ticket,
is little more than a symbol intended to show to the
agents in charge of the car that the possessor has en-
tered into a contract with the company owning the car,
by which he is entitled to passage on the car named on
the ticket."—*Lewis v. New York S. C. Co.,* 143 Mass.
267; 9 N. E. 615, 58 Am. Rep. 135.

2.   When sleeping car accommodations are sold by a
sleeping car company in a particular sleeper to a trav-
eler entitled to buy them, he becomes, for the period
covered by the contract, the owner of a special prop-
erty right in that sleeper.   As an illustration, a man
holding a first-class railroad ticket of a certain railroad
entitling him to continuous passage on a certain train
running on that railroad from Birmingham to Chicago
buys a sleeping car ticket entitling him to the drawing
room on a certain through sleeper from Birmingham to
Chicago attached to and forming a part of that train;
that man, in effect, rents that drawing room for the
period covered by the train in going from Birmingham
to Chicago, and, so long as he observes the reasonable
rules of the sleeping car company, has a right to the
occupancy of the drawing room, and a special property
right in the sleeper of which it forms a part.   If ejected
from the car during the period for which he has the

right to occupy it, his property right is invaded.—Beale on Sleeping Cars, § 345.

In truth, sleeping car companies, while not innkeepers, nevertheless, after the fashion of innkeepers, furnish accommodations for travelers while making a journey by train, and a passenger, having properly secured his right to sleeping car accommodations on a certain train, has a special property right in the accommodations for which he has contracted.—Beale on Sleeping Cars, §§ 341, 342.

3. A sleeping car company engaged in the business of furnishing sleeping car accommodations to the traveling public is a public service corporation, and is liable in damages, just as other public service corporations are liable, for a breach of its duties to a member of the public which it is bound to serve.—*Nevin v. Pullman Palace Car Co.,* 106 Ill. 222, 46 Am. Rep. 688; Beale on Sleeping Cars, § 343.

4. The first count of the complaint in this case charges that the plaintiff had bought and paid for sleeping car accommodations on a certain sleeper from Birmingham to Chicago, and contains the averment necessary to show that she was entitled to occcupy that sleeper until her train reached Chicago. The count then avers that "defendant's servant or agent in charge or control of said through sleeping car did at Nashville, Tenn., a point far short of plaintiff's said destination, to-wit, Chicago, wrongfully cause plaintiff to leave said through sleeping car, and in or about so doing spoke rudely to plaintiff, and as a proximate consequence of said wrong of said servant or agent plaintiff was separated from those with whom she was traveling in said car and from her friends and relatives  *  *  *  and was greatly inconvenienced and annoyed and humiliated, and suffered great mental and physical pain and

anguish," etc. This count does not, in words, say that the agent who required the plaintiff to leave the car at Nashville was, when he did so, acting within the line or scope of his employment, but it does aver that he was "the servant or agent in charge or control" of said car. If the person who required the plaintiff to leave the car was the party whom the defendant had put in charge or control of the car, then he was, necessarily, acting within the line of his employment when he required the plaintiff to leave it.

5. While the first count states that the "defendant was operating a through sleeping car for the carriage of passengers from Birmingham, Ala., to Chicago, Ill.," the other averments of that count show no one had a right in that car except the holders of a certain form of ticket over the Louisville & Nashville Railroad who also had bought and paid for sleeping car accommodations on said car. Taking all of the averments of the count together, it is manifest that the pleader did not intend to or in effect charge that the defendant was a common carrier of passengers, but that, as stated in another part of the count, those rightfully occupying the car under contracts with the defendant were simply entitled to occupy said car and enjoy the comforts thereof as passengers on a train of the Louisville & Nashville Railroad Company.

We are therefore of the opinion that count 1 of the complaint sufficiently stated a cause of action against the defendant, and that it was not subject to the defendant's demurrer.

Count 3 shows with sufficient certainty that, when the plaintiff was subjected to the rudeness complained of, she was rightfully within the protection of the defendant company. While a sleeping car company may not, in many ways, be subject to all the rules applied

by the law to innkeepers, we do not think that the law exacts more than should be required of them, in declaring that passengers rightfully in their cars as such shall be treated by their servants with due consideration, and that they shall not be subjected to insult by them.— Beale on Innkeepers & Hotels, §§ 373, 384.

The third count was not subject to the demurrer interposed to it by the defendant.

7. It is undoubtedly true that, as between the conductor and the passenger, the ticket of the passenger is the sole evidence of the contract.—*McGee & Fink v. Reynolds*, 117 Ala. 413, 23 South. 68. But, as was said in *St. Louis, Arkansas & Texas R. Co. v. Mackie*, 71 Tex. 491, 9 S. W. 451, 1 L. R. A. 667, 10 Am. St. Rep. 766: "While, under the regulation made by the appellant, it may have been made the duty of conductors to their companies to regard the tickets as the only evidence of the contract to which they could look for the regulation of their conduct, the law affects the appellant with knowledge of the real contracts made by its agent, and it cannot be permitted to shield itself from liability for the nonperformance of its contract on the ground that it had made a regulation which precluded its conductors from making any inquiries as to the real contract made or from carrying it out."

"The carrier cannot shield itself from the consequences of misconduct or mistake on the part of one of its agents acting within the scope of his duties which has naturally betrayed another of its agents into the final act of injury to the passenger."—*L. & N. R. Co. v. Hine*, 121 Ala. 234, 25 South. 857.

In other words, if a traveler buys a sleeping car ticket from Birmingham to New York, and by a mistake the ticket agent gives him a ticket calling for sleeping car accommodations only to Washington, and the traveler is

required, by the sleeping car conductor, to leave the car at Washington, then, in an action of trespass on the case brought by such traveler against the sleeping car company in which the complaint charges that the conductor wrongfully ejected such passenger from the car, the plaintiff may recover. The mistake of the agent in handing the passenger an improper ticket is visited upon the act of the conductor in requiring the passenger to leave the car and renders his act wrongful in spite of the language of the ticket. .

8. The plaintiff in this case, an unmarried woman, desiring to go to Chicago from Birmingham, and desiring to take advantage of certain special round-trip excursion rates which the Louisville & Nashville Railroad Company had advertised to take effect on August 14, 1909, from Birmingham to Chicago, about one week before August 14, 1909, went to the ticket office of said railroad company in Birmingham to engage her passage and sleeping car accommodations. The ticket agent of the railroad company was also the agent of the defendant Pullman Company for the purpose of selling sleeping car tickets. Said agent told the plaintiff that he would reserve her a ticket and sleeping car accommodations on a *through* sleeper from Birmingham to Chicago, but only for sleeping car accommodations from Birmingham to Chicago "good to leave on that train." The Louisville & Nashville Railroad Company, it appears from the bill of exceptions, ordinarily had no through sleeper from Birmingham to Chicago on the train which the plaintiff contemplated taking when she first saw the agent about the tickets, and which she afterwards took as a passenger to Chicago on August 14th. Passengers who bought through sleeping car accommodations from Birmingham to Chicago good for that train were, ordinarily, required to ride in a local

sleeper to Nashville, and at Nashville were placed in another sleeper, picked up at Nashville, which went through from Nashville to Chicago.    There is no evidence in the bill of exceptions tending to show that, at the time the plaintiff first saw the agent about the purchase of the tickets, she knew, or had reason to believe, that the custom of the Louisville & Nashville Railroad Company would be changed in this particular on August 14th. On the contrary, the evidence set out in the bill of exceptions shows that the Louisville & Nashville Railroad Company made no agreement with the Pullman Company for a through sleeper from Birmingham to Chicago for August 14th until August 11th, after the plaintiff had made the agreement above referred to with the ticket agent relative to her tickets.

On August 13th or 14th the plaintiff again saw the ticket agent and paid him for a round-trip railroad ticket and also for "Pullman accommodations from Birmingham to Chicago, good to leave on that train," viz., on the train on which plaintiff became a passenger on August 14th.    It appears from the evidence that there was one through sleeper attached to the plaintiff's train for the special occasion of August 14th, but that the sleeping car ticket which was given to the plaintiff entitled her to a seat in *that* car from Birmingham to Nashville, and to a berth in some other car from Nashville to Chicago.    As we understand the evidence set out in the bill of exceptions, the plaintiff, from what she said to the ticket agent and from what the ticket agent said to her, was entitled to receive, when she paid him the money for her sleeping car accommodations, a ticket giving her the right to occupy sleeping cars from the time she left Birmingham until she reached Chicago, but a ticket which called for a seat in a sleeper from Birmingham to Nashville, and for a

berth on a sleeper on the same train from Nashville to Chicago, met her request for "Pullman accommodations from Birmingham to Chicago, good to leave on that train." She did not, according to the bill of exceptions, call for accommodations on a *through* sleeper from Birmingham to Chicago but for "Pullman accommodations from Birmingham to Chicago, good to leave on that train." This, so far as the evidence discloses, entitled the plaintiff to Pullman accommodations from Birmingham to Chicago without being required to change trains, but it did not prevent the sleeping car company from selling her a ticket entitling her to a seat in one car during the daytime and a berth in a different car at night.

9. The first count of the complaint charges that on the 14th day of August, 1909, the defendant was operating a through sleeping car for the carriage of passengers from Birmingham, Ala., to Chicago, and agreed with plaintiff for hire and reward paid by plaintiff to permit plaintiff to *occupy said car* and enjoy the comforts thereof from Birmingham to Chicago. The count then charges that the defendant, through its conductor, *wrongfully* required the plaintiff to leave the car at Nashville. The only through sleeper which was carried by the railroad company from Birmingham to Chicago on the occasion referred to was the sleeper "Fingal." The plaintiff's sleeping car ticket called for a seat in the "Fingal" from Birmingham to Nashville and for a berth in some other sleeper from Nashville to Chicago. She was therefore entitled only to a seat in the "Fingal" to Nashville, and, under her contract with defendant, to a berth, without being required to leave the train on which she left Birmingham to get to it, in another sleeper. As the plaintiff was not entitled to a berth in the "Fingal" after she left Nashville, but was entitled to a

berth in some other sleeper attached to her train or which should have been attached to her train at Nashville, it seems to us that, as to the first count of the complaint, there was a fatal variance between the allegations and the proof. In fact, the learned judge who presided at the trial of this case in the court below, at the request of the defendant, charged the jury that "if you believe the evidence you cannot find that the plaintiff in this case was entitled to a berth in the car 'Fingal,' in which she rode from Birmingham to Nashville, between Nashville and Chicago." If that charge, as applied to the evidence, was a correct statement of the law, and we think that it was, then, certainly, the defendant was entitled to the general charge which it requested the court to give to the jury in its behalf as to the first count.

If, when plaintiff's train reached Nashville and before she was required to leave the sleeper "Fingal," the car into which the plaintiff was required to go to get her berth had been attached to the plaintiff's train, and the plaintiff had been required simply to move from the "Fingal" into the other sleeper, the contract made by the defendant with the plaintiff would, in *that* regard, have been fully met. She was, according to the evidence contained in the bill of exceptions, entitled to sleeping car accommodations from Birmingham to Chicago on the train on which she left Birmingham, and no more. The evidence shows that the defendant violated the duty which, under the evidence set out in the bill of exceptions, it owed the plaintiff, because, when her train reached Nashville, the sleeper which she was required to occupy from Nashville to Chicago was not attached to her train at Nashville, but was attached to another train which was made up at Nashville and which left Nashville for Chicago as a separate section of the train

on which she took passage at Birmingham. In other words, the evidence of the plaintiff tends to show that the plaintiff, when she reached Nashville, was required to get off of the train on which she left Birmingham and go across several intervening tracks, to *her* sleeper attached to a train which was run out of Nashville as a section of the train on which she left Birmingham, when, under the real contract as shown by the evidence contained in the bill of exceptions, the sleeper into which she was required to go when she left the "Fingal" should have been a part of the same train on which she went into Nashville. Having contracted for such a sleeper, the defendant owed the plaintiff the duty to furnish it, and, having failed to do so, it violated a duty which it owed the plaintiff.

The plaintiff, however, failed by her evidence to show that when she reached Nashville she was required to leave the particular sleeper which she alleges in the first count of her complaint she was entitled to occupy from Nashville to Chicago, and which, in said count, is described substantially as follows: "A through sleeping car which defendant was operating for the carriage of passengers from Birmingham, Ala., to Chicago, Ill., which, for hire and reward, the defendant agreed to permit plaintiff to occupy from said Birmingham to said Chicago." The only through sleeper on the train on which plaintiff left Birmingham, as above stated, was the "Fingal."

10. The evidence without dispute shows that the defendant sold the plaintiff sleeping car accommodations good for the train on which she left Birmingham until it reached Chicago. The defendant breached its contract when it required the plaintiff to leave her train and go across intervening tracks to get her sleeper when she reached Nashville. Her contract did not call for the

sleeping car in which her relations bought their berths, and she is entitled to no damages because of her separation from them. There is nothing in the record indicating that such an element of damages could reasonably be supposed to have been within the contemplation of the plaintiff and the Pullman Company when the plaintiff bought her sleeping car accommodations. As was said by this court in the case of *Birmingham Waterworks Co. v. Martini*, 2 Ala. App. 652, 56 South. 830: "In some instances there are wrongs which grow out of a breach of a contract, and in which assumpsit and an action of trespass on the case are concurrent remedies. 'In such cases,' says our Supreme Court, 'the measure of damages cannot be altered in any substantial respect by the mere adoption of one form of action rather than another for the redress of the same grievance.' And in such cases the damages recoverable are those which are the natural and proximate consequences of the breach, and such as may reasonably be supposed to have been within the contemplation of the parties as a consequence of the breach when the contract was made."—*Western Union Telegraph Co. v. Westmoreland*, 151 Ala. 319, 44 South. 382.

If, when the train reached Nashville, the sleeper in which the plaintiff was required to go had been attached to the train on which she left Birmingham, and after she had been placed in it the sleeper had then been taken by the Louisville & Nashville Railroad Company from the train and attached to the other section of the train, the plaintiff under the evidence in this case, would not have been entitled to any damages on that account. The sleeper in which she was placed at Nashville reached Chicago at the same moment the "Fingal" reached it, and it is evident that she is entitled to nothing because, at one time during her journey to Chicago,

*her* sleeper was attached to a different section of the train from the section which carried the "Fingal."

Reversed and remanded.

## On Application for Rehearing.

After a careful examination of the evidence as set out in the bill of exceptions, we came to the conclusion that the appellee, while not entitled to a seat and a berth in the car Fingal—a through sleeper from Birmingham to Chicago—was entitled to sleeping car accommodations on the train from Birmingham to Chicago without being required to leave the train on which she left Birmingham. While the Fingal was the only through Chicago sleeper on the train when it left Birmingham, and while the appellee had no contract giving her a specific right to occupy that particuler sleeper from Birmingham to Chicago, the evidence, fairly construed, shows that she *was* entitled to sleeping car accommodations on *that* train through to Chicago. The train on which appellee left Birmingham went through from Birmingham to Chicago, and it had sleepers attached to it *all* the way. While, as above stated, appellee had no specific right to a berth in the Fingal, she did have a right to accommodations on some sleeper attached to that train. In the present instance there was no failure of the railroad company to make connection at a transfer point or to have sleeping cars attached to the train on which appellee left Birmingham, or any casualty bringing the appellee's case within the doctrines announced by the Federal courts in *Calhoun v. Pullman Co.*, 159 Fed. 387, 86 C. C. A. 387, 16 L. R. A. (N. S.) 575, or *Duval v. Pullman Co.*, 62 Fed. 265, 10 C. C. A. 331, 33 L. R. A. 715.

The application for a modification of the opinion by us in the above case is overruled.

Application overruled.