Missouri Pacific Railway Company v. J. F. Martino.

No. 478.

**1. Railway Company — Round Trip Ticket — Pleading Germane Facts.**—*Plaintiff purchased for his wife a round trip ticket from D. to S., containing a stipulation that in order for it to be good for the return passage it should be presented by her within a stated time to the agent of the defendant railway company at S., and should be signed and stamped by him. She duly presented the ticket to such agent at S.. who wrongfully refused to sign and stamp it; and when she presented it to defendant's train conductor on the return trip, he refused to honor it, treated her with great rudeness, and as she had not money with which to pay her fare, exacted the deposit of her watch as security for the fare. Held, that the wife was not a trespasser on defendant's train on the return trip. her contract right of passage not being lost because of the agent's refusal to sign and stamp the ticket, but that such refusal was well pleaded and proved by plaintiff, in connection with the other facts, as germane to his cause of action in damages for the wrongs suffered by his wife.*

**2. Verdict for Damages for Mental Suffering Held not Excessive.**—A verdict of $2000 for the mental suffering of plaintiff's wife resulting from rude and violent treatment of her by defendant's agents and train conductor, held not excessive in this case.

**3. Practice — Harmless Error in Overruling Special Exception.** Error in overruling a special exception is harmless where the charge of the court excludes from the consideration of the jury the matter to which the exception is addressed.

ON REHEARING.

**4. Damages for Mental Suffering of Husband not Recoverable, When.**—Pain and mental anguish suffered by the husband on account of injuries inflicted upon the wife can not be considered as an element of damages in a suit by the husband for the wife to recover damages flowing from such injuries sustained by her.   Following Telegraph Company v. Cooper, 71 Texas, 507. See the opinion for a charge of court held, under the pleadings and proof, not to exclude such element of damage from the case.

APPEAL from Dallas.   Tried below before Hon. R. E. BURKE.

This cause was first decided by the Commission of Appeals, Section B, February 22, 1892, and their report adopted by the Supreme Court; but a motion for rehearing having been granted, the case was transferred to the Court of Civil Appeals for final determination.

*Alexander & Clark,* for appellant.— 1. The ticket is the only evidence to be regarded by the conductor as to the passenger's rights of transportation.   The ticket contained an express contract, which in terms provided, that it should be presented to defendant's agent at St. Louis, there signed by the passenger and stamped by said agent, before the passenger would be entitled to return transportation from St. Louis to Dallas on the ticket.   This express contract was lawful and valid; and the passenger having failed to comply therewith, before boarding defendant's train should have provided herself with a ticket or fare for her return transportation; and failing to do so, was a trespasser upon defendant's train. Plaintiff not suing for a breach of the contract by defendant's agent at St. Louis, but suing for injuries inflicted upon plaintiff's wife by defendant's conductor, the acts of the agent at St. Louis, and the other fact that plaintiff's wife was without money, were not germane to plaintiff's cause of action sued upon, and should have been excluded.   Bradshaw v. Railway, 135 Mass., 407; Thomas v. Railway, 72 Mich., 355; Cheney v. Railway, 11 Metc., 121; Yorton v. Railway, 54 Wis., 234; Townsend v. Railway, 56 N. Y., 295; Petrie v. Railway, 42 N. J. Law, 449; Dietrich v. Railway, 71 Pa. St., 432; McClure v. Railway, 34 Md., 532; Railway v. Rice, 38 Kans., 398; Railway v. Fleming, 14 Lea, 128; Shelton v. Railway, 29 Ohio St., 214; Downs v. Railway, 36 Conn., 287; Frederick v. Railway, 37 Mich., 342; Mackay v. Railway, 11 S. E. Rep., 737; Peabody v. Railway, 26 Pac. Rep., 1053; Churchill v. Railway, 67 Ill., 390; Rowitzky v. Railway, 40 La. Ann., 47; Baylon v. Railway, 132 U. S., 146; Mosher v. Railway, 127 U. S., 390; 21 Am. and Eng. Ry. Cas., 283; Hutch. on Carr., 675.

2. Where the plaintiff sues for the injury, etc., of his wife, he is not entitled to recover damages for his own mental anguish and shame because of the wrongs inflicted upon her, his suffering being too remote and consequential.   Tel. Co. v. Cooper, 71 Texas, 507.

3. Where the verdict of a jury is clearly wrong and excessive, when the jury have decided manifestly against the weight of the evidence, it is the duty of the court to set it aside. Railway v. Schmidt, 61 Texas, 285; Railway v. Hughes, 68 Texas, 290; Railway v. Blohn, 73 Texas, 637; Miller v. Baker, 20 Pick., 288; Wait v. McNeil, 7 Mass., 211; Coffin v. Ins. Co., 15 Pick., 291.

*A. S. Lathrop* and *S. H. Russell*, for appellee.

FISHER, Judge, *Section B.*—This suit is by appellee to recover from appellant $5000 as damages resulting from injuries received by his wife in travelling from St. Louis, Missouri, to Dallas, Texas. The case was tried by a jury, and resulted in a verdict and judgment in appellee's favor for $2020.45.

The petition, in substance, alleges: That on or about the 13th day of September, 1886, plaintiff's wife wishing to visit the city of St. Louis, he purchased from the agent of the Houston & Texas Central Railway Company at Dallas, Texas, a first class excursion ticket for his wife from Dallas, Texas, to St. Louis and return.

That he paid for said ticket the sum of $20.80; that said agent then and there stamped said ticket and the said Lillie Martino signed the same, as required by the terms of said ticket. That said ticket was good for the return trip until October 29, 1886. That on the 13th day of September, 1886, the said Lillie Martino, with her little child, started from Dallas on the cars of the Houston & Texas Central Railway, and proceeded on said cars to Denison, Texas, and then proceeded to St. Louis from Denison on defendant's road. That in going to St. Louis said ticket was duly honored by the conductors of said roads, and that the said Lillie Martino had no trouble in going from Dallas to St. Louis.

The petition then alleges, that said Lillie Martino, having finished her visit at St. Louis, on October 6, 1886, presented said ticket to the agent of defendant at its office in St. Louis, and requested him to sign and stamp the same, as required by the terms of said ticket. That said agent looked at said ticket contemptuously, handed it back to said Lillie Martino, and refused to have it signed or stamped, saying it was "no good." That she was a stranger in St. Louis, and had spent all the money she had taken with her, and having with her her little child, did not know what to do. That she got on defendant's train of cars at St. Louis and started home. That the conductor from St. Louis to Sedalia examined her ticket and passed her to Sedalia without objection. That at Sedalia another conductor took charge of said train; that she showed him her ticket, and that he refused to honor the same. That she told him she had no money, and that he then took her baggage check and told her he would let her ride

to Dallas, and that he would notify the next conductor of this arrangement.

That at Parsons, Kansas, the next conductor took charge of said train, and that when he came round for tickets it was midnight, and that she was lying with her head on the seat in front of her and was asleep. That this conductor, upon reaching her, caught her by the hair and jerked her head back, nearly breaking her neck, and said to her in a violent and insulting manner, "Madam, your ticket." That his manner was so violent and insulting that she became very much frightened. That she told him she had given the conductor from Sedalia to Parsons her trunk check, and that said conductor had promised she could ride to Dallas, and that she asked the conductor if the former conductor had not told him that he had her check for her trunk. That the conductor then in a very insulting manner told her he knew nothing about her trunk check, and that she must either pay her fare or get off the train. That she told him she had no money. Then he told her to give him her watch and chain as security for her fare, and that he would let her ride to Dallas. That he said " pay me the fare, give me your jewelry, or get off the train." That, being alone with her little child and among strangers, and the conduct of the conductor being so violent and harsh, she did not know what to do, and gave him her watch and chain. That he then handed her back her trunk check, although he had just before denied having it.

That when said train reached Denison, said conductor deposited said watch and chain with appellant's ticket agent there to secure her fare to Dallas. That plaintiff afterwards had to send to the ticket agent at Denison $20.45 to redeem said watch and chain for fare wrongfully charged his said wife. That when plaintiff met his wife at the train on her arrival at Dallas, she was in tears and nearly distracted; and she then told him of the wrongs, insults, and indignities she had suffered on her trip at the hands of defendant's agents; that he took her home, and she was sick and confined in her room for a number of days, and was unable to attend to her duties, and the same caused your petitioner much pain and anguish; that all such sickness, pain, and anguish was caused from acts of defendant's agents as aforesaid.

Defendant pleaded a general demurrer, and excepted specially:

First. To all that portion of said petition which charges that its agent at St. Louis refused to countersign said ticket as required by the terms of said ticket, and that said agent contemptuously handed the ticket back to plaintiff's wife, saying it was no good; that Mrs. Martino was without money and did not know what to do, and got upon defendant's train, etc.; because the same are irrelevant and inadmissible matters in this suit, and were injected in it to prejudice the rights of appellant.

Second. To the allegations of pain and anguish suffered by petitioner, because the husband's anguish is too remote.

Third. To the allegations of said petitioner charging that its conductor approached plaintiff's wife while she was asleep, and caught her by the hair and jerked her and nearly broke her neck, because said allegations are too improbable and lack verity on the face thereof.

Defendant further pleaded a general denial, and specially pleaded that according to the terms of said ticket or contract, in order for Lillie Martino to be entitled to return thereon from St. Louis to Dallas, it was contracted and agreed, for and on account of the reduced rate or charges therefor, that she would sign said ticket at St. Louis and have the same stamped by defendant's agent at St. Louis, and that if she failed so to do, that said ticket was to become null and void; that she did fail so to do, and that said conductor, as he was in duty bound to do according to the terms of said ticket or contract, refused to accept said ticket and demanded her fare.

Defendant expressly denied that its conductor caught plaintiff's wife by the hair, or jerked her, or in any other way mistreated her, but that he, to the contrary, treated her kindly, credited her for her fare from St. Louis to Dallas, taking security therefor, she being a stranger to him, which amount plaintiff afterward paid, as he was in duty bound to do, upon which payment the watch and chain given as security for her fare were returned to her.

The court overruled the general and special demurrers.

These are the facts briefly stated: September 13, 1886, appellee, for the use of his wife, purchased from the Houston & Texas Central Railway Company at Dallas, Texas, a first class tourist ticket, good until October 29, 1886. The ticket was signed by Mrs. Lillie Martino, the wife of appellee, and entitled her to passage from Dallas, Texas, to St. Louis, Missouri, and return. The ticket contains a stipulation, that it is not good for return passage unless the holder signs the same and identifies himself as the original purchaser to the satisfaction of the authorized agent of the Missouri Pacific Railway Company at St. Louis, Missouri, on or before October 15, 1886, and when duly witnessed by the agent and dated in ink, and duly stamped by said agent, the ticket shall then be good until October 29, 1886; and that the original purchaser agrees to sign his name and otherwise identify himself as such whenever called upon to do so by any conductor or agent of the lines over which the ticket reads; and on failure or refusal the ticket shall become void.

Mrs. Martino travelled from Dallas to St. Louis on the ticket. About October 5 or 6, 1886, desirous of returning to Dallas, she presented the ticket to the ticket agent of the Missouri Pacific Railway Company at St. Louis, with request to sign and stamp same. The agent returned the ticket to her, with the statement that it was not good, and refused to sign and stamp it. She then, without the ticket being signed or stamped by the St. Louis agent, boarded appellant's train on her return trip to

Dallas.   The conductor on appellant's train between St. Louis and Seda-
lia, Missouri, honored the ticket, and passed her to the latter place.   There
another conductor took charge of the train and ran it to Parsons, Kansas.
The conductor between Sedalia and Parsons examined the ticket and re-
fused to permit her to ride on it, and demanded of her her fare in money.
Mrs. Martino then stated to him that she had no money.   He then asked
if she had any baggage, and upon her replying she had, he then demanded
her baggage check, which she delivered to him.   The conductor then
handed her a paper check, telling her to keep it; that she could ride to
Dallas on it.

About midnight another conductor took charge of the train at Parsons,
and ran it to Denison.   Mrs. Martino testified, "That it must have been
about this time of the night.   I was resting my head upon my arm on
the seat in front of me, and the conductor came along and struck me on
the head hard, and said, ' Ticket, madam,' in a very rough manner.   He
said, ' I want your ticket.'   I handed him the ticket, but he did not
hardly look at it before he said it was not good.   He said he would have
to have baggage, money, or jewelry, or I would have to get off the train.
I said I would like to have my trunk.   I asked him if he knew the name
of the man who took my trunk check.   He said, ' No; I don't want any
explanations; all I want is money, jewelry, or baggage.'   I told him that
I did not have any money.   He said he wanted my watch and chain.   I
had my watch in my bosom and the chain was exposed to view.   I told
him the other conductor had my trunk check.   He told me that he did
not know anything about the other conductor, and did not know any-
thing about my trunk check.   As soon as I handed him my watch and
chain he handed me the trunk check.   He told me I would have to get
off if I did not give him my watch and chain.   I told him I would tele-
graph the Exchange Bank for money, but he would not wait.   I told him
my name, and that it was on my trunk.   It was a new trunk.   It was
what you call a lady's travelling trunk.   This conductor was talking
very loud.   Everybody in the car heard what he said.   I gave him my
watch and chain, and then he handed me my trunk check.   I rode on to
Denison all right.   *   *   *

" The conductor struck me with his hand.   He knocked my head back.
He struck me and pulled my head back.   I had done nothing to him.   I
was not asleep; I was just resting.   He did not say anything, but just hit
me, and said, ' Ticket, madam.'   I had no warning that he was going to
hit me.   He said ' Ticket, madam,' very roughly, and I handed him my
ticket, and he tore off a coupon and said it was not good.   I explained
to him what the other conductors had done.   The coupons from St. Louis
to Denison were not taken off the ticket by me.   They took them off.   The
agent at Denison gave me a piece of paper and told me to keep it, and
when I should send him $20.45 he would send me my watch and chain.

He and the conductor furnished me a ticket from Denison to Dallas. I got home (to Dallas) about 6 o'clock in the evening. I met my husband at the depot. I felt very bad and ashamed when I came home. When I got home, I laid down on the bed for sometime.

"When the conductor struck me, it was not far from Parsons. It was that time he was taking up fare. The treatment I received from the conductor excited me very much at the time. I felt mortified and ashamed. I could not explain how I did feel. Nobody was with me except a child of mine. I knew no one in the coach. I met my husband at Dallas, at the depot, and told him what had happened to me. I told him all about it. I was crying at the depot at Dallas. I was crying and sobbing at Denison over my treatment. I asked the conductor to get me a ticket from Denison to Dallas. He promised me he would. At Denison I had to hunt him up, and then he and the agent gave me the ticket to Dallas. He told me my fare was $20.45, and I could send him the amount and he would return watch and chain. When I got to Dallas, I sent to the agent at Denison $20.45, and he sent me my watch and chain."

Appellee Martino testified: "That he paid $20.80 for the ticket when he purchased it from the Central Railway Company at Dallas. His wife went to the ticket office with him, and she there signed the ticket. I met her at the depot at Dallas on her return. She was looking pale and had been crying. I asked her what was the matter. She said, 'I have got no more watch; the ticket was not good; the ticket agent would not sign it.' I sent the $20.45 to get the watch and chain. After my wife returned, she was sick and in bed for sometime after she came back. She was confined to her room and in bed in the daytime. That he felt ashamed and bad over it. She told me the way she had been treated by the conductor between Parsons and Denison, and said it made her feel bad and ashamed. Did not send for any physician to see my wife. She was not very sick, but she felt bad over the way she had been treated."

C. C. Odem, witness for defendant, testified: That he was ticket agent at Dallas, and sold the ticket to Mrs. Martino, and that he had authority to sell it, and that it was sold for one fare for the round trip. The regular fare to St. Louis from Dallas is $20.20.

Witness Waggener, the conductor between Parsons and Denison, contradicts the evidence of Mrs. Martino as to what occurred between them on the train, and denies any ill treatment of her. He further testifies, that he requested her to write her name so that he could identify her signature with that on the ticket, but she refused to do so; and he further states that if she had done so, he would have permitted her to ride on the ticket, and it was upon her refusal that he demanded fare. The conductor also testified that Mrs. Martino, at the time he examined the ticket, told him that she tried to get it signed at St. Louis and could not do so. Mrs. Martino denies that any request was made for her signature, or that she

be identified, but she told him her name and that she had letters in her satchel from her husband, and that she could identify herself, and that her name was on her trunk.

Appellant's first assignment of error relates to the action of the court in overruling defendant's first special exception; because Mrs. Martino was not entitled to return transportation from St. Louis to Dallas upon said ticket, for the reason that the same had not been signed and stamped at St. Louis, as required by the contract, and that she was a trespasser upon defendant's train, and the acts of said agent at St. Louis are irrelevant and inadmissible; that plaintiff's cause of action, if any, is dependent upon the conduct of the conductor.

Appellant's second assignment of error questions the following charge given by the court:

" If the evidence before you in this case satisfies your minds that Mrs. Martino, on or before October 29, 1886, went to the authorized agent of the defendant at St. Louis, Missouri, and was ready to identify herself as the original purchaser, and asked and requested said agent to sign and to stamp the ticket, and this request was by said agent refused; and you further find that as a result of said refusal to sign and stamp the ticket, that the conductor in charge of defendant's train refused to recognize and receive said ticket, and threatened to put her off the train, and demanded security for her fare over defendant's line of road; and if the evidence further satisfies your minds that while plaintiff's wife was such passenger on her return trip, the conductor in charge of defendant's train acted in a harsh, ungentlemanly, and oppressive manner toward her, by reason of the fact that the ticket was not signed and stamped, then the plaintiff would be entitled to recover the actual damages occasioned thereby."

The objections urged to this charge are, that it assumes that a trespasser on defendant's train was a passenger, and because the charge makes the defendant liable to plaintiff for said injuries and insults, if any, inflicted in transportation by said conductor, because of defendant's agent's failure to countersign said ticket at St. Louis, when the pleading and the facts show that the failure of said agent at St. Louis is irrelevant, and too remote and indirect to base said recovery upon in whole or in part. As these assignments practically raise the same question, we will consider them jointly.

The conduct of the agent at St. Louis was an important fact to be alleged and proven in order to show the right of Mrs. Martino as a passenger on appellant's train, and to negative the idea that she was a trespasser. The averments of the petition show that she, at St. Louis, did all that could reasonably be expected of her in complying with her con-

tract.    She tendered the ticket to the agent at St. Louis, with the request
that he sign and stamp it; that he refused to do so, giving as a reason
that the ticket was not good.    The averments of the petition show that
the ticket was good, and all that it needed was his signature and stamp.
The tender and offer of performance of the contract by Mrs. Martino,
and the refusal of the agent to observe it, did not relieve the appellant
of its duty to transport her to Dallas.    It was the duty of the agent, as
shown by the terms of the contract, to sign and stamp it when presented
by Mrs. Martino for such purpose    Her right to be carried as a passen-
ger on appellant's train was not lost by reason of the arbitrary refusal of
the agent to perform and observe a stipulation of the contract that his
principal had entered into.

The right of passage springs from the contract made with the carrier;
the ticket is the evidence of this right; but what is contained therein or
omitted therefrom is not in all cases to be considered as conclusive of the
rights of the passenger travelling upon the ticket.    For the agent issuing
the ticket, or some agent through whose hands it must pass, by reason of
negligence or willful failure to perform his duty, may fail or refuse to do
something required by the contract of carriage that should have been
done, in order to make the ticket embody the conditions and terms of
the contract as actually agreed to.    The passenger who complies with his
contract does not lose his right to transportation because of the error or
mistake of the agent in failing or refusing to do that which is necessary
to show the passenger's right.    Under such circumstances it is not incum-
bent on the passenger to pay an additional fare.    He can rely solely on
the contract made with the carrier.    Pennsylvania Co. v. Bray, 125 Ind.,
229; Railway v. Mackie, 71 Texas, 491; Wightman v. Chicago, 40 N.
W. Rep., 691; Head v. Railway, 7 S. E. Rep., 217; Railway v. Bamley,
16 Atl. Rep., 67.

We do not think there was error in overruling the demurrer, or that
the court erred in giving the charge.    The charge presents the entire
case to the jury growing out of the facts that show the wrongful acts of
the agent at St. Louis in refusing to sign and stamp the ticket, and the
wrongful acts of the conductors in their conduct towards Mrs. Martino.
It leaves them to fix the cause and effect of all these acts from the begin-
ning to the end of the conduct of the parties, at St. Louis and to Deni-
son.    We think it was proper that all of these facts should be considered
by the jury.    The conduct of the agent at St. Louis is admissible for the
purpose of showing the effect it produced, and further to negative the
fact that Mrs. Martino was a trespasser and to show her right on the train.
The case of Mosher v. Railway, 21 American and English Railway Cases,
283, relied on by appellant, is unlike this case.    There the purchaser of
the round trip ticket that was required to be stamped and signed by the
agent did not present it to the agent, and consequently he did not refuse

to sign or stamp it.   There was no refusal by the agent to do what was agreed should be done that amounted to a violation of the contract.  The agent was not present at the ticket office when the holder of the ticket desired that it should be signed and stamped.  Without seeing the agent, he boarded the train with the ticket unstamped and unsigned.  It was refused by the conductor.  In the case before us, there is a violation of the contract, a refusal of the carrier to sign and stamp the ticket as it had agreed to do.

It is contended that the court erred in overruling the demurrer presented by appellant, to the effect, that appellee could not recover for the pain and mental anguish suffered by him; and also, that the court erred in refusing to give a charge asked by appellant to that effect.

It is decided in the case of Telegraph Company v. Cooper, 71 Texas, 507, that pain and mental anguish suffered by the husband on account of injuries inflicted upon the wife can not be considered as an element of damages in a suit to recover damages flowing from such injuries sustained by the wife.  While it may have been error in the abstract to have overruled the demurrer, and to have refused the charge, we do not believe it was such error as would require a reversal of this case.  The court, in its charge, pointedly instructed the jury that as an element of damages they could only consider the mental anguish and sense of shame, if any, suffered by Mrs. Martino by reason of the treatment of the conductors, etc. The effect of this charge was to eliminate from the mind of the jury the consideration of any question as to mental anguish and suffering by the husband.  The effect of the charge was to purge the record of any issue of mental suffering experienced by the husband, as presented either by the pleadings or evidence.  In fact, giving consideration to all the allegations of the petition, it is doubtful if any claim for the mental suffering of the husband is presented.  The evident purpose was to make the sickness, pain, and anguish experienced by the wife the sole basis of the action for damages.  It is not seriously contended that the evidence presents a state of facts that show that the husband relied upon his mental distress as an element of damages, or that he sought recovery for such reason.  But upon the contrary, the only logical conclusion that can be drawn from the evidence is, that it was the anguish and suffering experienced by the wife that the jury considered, or could consider, in rendering a verdict.

It is contended that the verdict of the jury is excessive, and that it is not supported by the evidence.  We think the evidence sufficient to support the judgment, and we do not believe the verdict excessive.  If the evidence introduced in behalf of the plaintiff is true (which the jury evidently so considered, and we see no reason to doubt the correctness of their conclusion), it presents a case of gross insults and indignities inflicted upon her by a brutal conductor in the employment of appellant,

and while engaged in the performance of service within the line of his duty. At the hour of midnight, among strangers, she was assaulted by the conductor striking her in the presence of others, threatening to then remove her from the train, with her child, if she did not surrender to him her watch and chain. This, after she had exhibited her ticket and explained to him why it was not signed and stamped by the St. Louis agent, and after she had offered to identify herself, and after he had received from the other conductor the baggage check which she had delivered as collateral to secure the payment of her fare to Dallas. Under such circumstances, she, in order to prevent her removal from the train, being without money, surrendered to the conductor her watch and chain.

The physical and mental pain suffered by a lady who has experienced the outrages and insults shown to have occurred in this case, can not be measured by any standard of value that would limit the jury in awarding her such amount as they in their discretion may see proper. There is no rule in a case of this kind that determines when the amount awarded is excessive. As said in the case of Railway v. Gilbert, 64 Texas, 541: "It is difficult to compute in figures what sum will repay the plaintiff for the gross insults and physical and mental pain to which she has been subjected by the misconduct and rudeness of the employes of a railway company as detailed by the witnesses in this case. The value of the time lost by her might be estimated, but the damages for her pain of body and mortification of mind must be left largely to the discretion of the jury. When they have not apparently abused this discretion, and no outside influences have been used to excite their passions or prejudices, the result of that discretion must control the judgment of this court on appeal."

We conclude the case should be affirmed, and so report it.

ON REHEARING.

HEAD, ASSOCIATE JUSTICE.—We adhere to that part of the opinion of the Commission of Appeals rendered in this case February 22, 1892, holding appellant responsible for the act of its conductors in refusing to receive the ticket of appellee's wife after its agent had wrongfully refused to stamp it at its office in St. Louis when presented to him for such purpose. It was the appellant, through its agent at St. Louis, that violated the contract evidenced by the ticket, by its wrongful refusal to stamp the same when presented to it; and it was the appellant, through its conductors, that wrongfully refused to accept the unstamped ticket, when this defect was attributable to its own fault and not that of appellee's wife. While appellant's conductors might have been obeying their instructions from it, yet it was the appellant that was guilty of the violation of the contract in the first instance, and it can not avail itself of its own regulations to shield it against the consequences of such violation. We think

these conclusions well sustained by the decisions referred to in the opinion rendered by the honorable Commission of Appeals at the former hearing of this case, and to be established in this State by the decision of our Supreme Court in the case of Railway v. Mackie, 71 Texas, 491.

Upon a careful examination of the record, however, we are of opinion that the judgment rendered by the court below should be reversed for the error recognized in the opinion of the Commission as having been committed by the court below in overruling appellant's special exception to that part of appellee's petition which seeks to recover damages for his own mental suffering, and in refusing to give a special charge requested by appellant, excluding this element of damage from the consideration of the jury. In the opinion of the Commission of Appeals, the charge given by the court did, in effect, do this; but we do not so construe the charge.

In his petition, after alleging the wrongs that had been done his wife and their effect upon her, appellant added another clause, as follows:

"Plaintiff would aver, that when his wife arrived at Dallas, he met her at the train, and she was in tears and nearly distracted, and she then told him of the wrongs, insults, and indignities that she had suffered on her trip at the hands of defendant's agents, and that he took her home, and she was sick and confined in her room for a number of days and unable to attend to her duties, and the same caused your petitioner much pain and anguish, and all of such sickness, pain, and anguish was caused from the acts of defendant's agents as aforesaid, to plaintiff's damage in the sum of $5000; wherefore," etc.

We construe these allegations to be a distinct averment of the mental anguish suffered by appellee, as distinguished from that set forth in the previous allegations in his petition as having been suffered by his wife. To this clause of the petition appellant interposed a special exception, which was overruled by the court below.

On the trial of the case appellee testified, that "after my wife returned from Denison she was sick and in bed for sometime. She was confined to the room and in bed in the daytime. That he felt ashamed and bad over it. She told him the way she had been treated by the conductor between Parsons and Denison, and said it made her feel bad and ashamed."

The court's charge upon the measure of damages was as follows: "Such damages would include any additional sum over and above the price of the ticket paid out by him; and you may also, as an element of actual damages, consider the physical pain and mental anguish and sense of shame, if any, suffered and endured by Mrs. Martino by reason of the treatment by defendant's agent and conductors, returning your verdict for such sum as in your judgment is just and proper."

Appellant requested an instruction to the jury, in estimating the damages not to consider any mental anguish suffered by the plaintiff. The

Commission of Appeals held the law to be, that appellee was not entitled to recover damage for his own mental suffering, but was of opinion that the charge of the court quoted above excluded such damages.   After a careful examination of the record, we are of opinion that the jury might not have so understood the charge.   The petition claimed this damage. There was evidence that such damage had been sustained.   The court's charge instructed the jury, that plaintiff's damage would include any additional sum over and above the price he had paid for the ticket, and that they might also allow him the damage sustained by his wife.   We believe appellant's special exception should have been sustained, and that the special charge requested by it should have been given; and we do not think that the record presents a case which will enable us to say that these errors did not operate to its prejudice, and we are therefore of opinion that the judgment of the court below should be reversed and the cause remanded for a new trial.   We adhere to the opinion of the Commission of Appeals upon the other questions discussed therein.

*Reversed and remanded.*

Delivered March 16, 1893.

Justice STEPHENS did not sit in this case.