### Texas and Pacific Railway Company v. T. J. Payne.

#### No. 1420. Decided May 18, 1905.

**1.—Carrier—Passenger—Ticket—Expulsion—Damages.**

A passenger upon a stock shipper's contract, good, under its terms, for return passage when presented to and indorsed by the railway agent at the destination of the shipment, who, on the refusal of the agent, on its presentation, to make such indorsement, takes passage on the train, and, refusing to pay fare, is ejected at an intermediate station by the conductor, may recover not only the value of the transportation and the expenses occasioned by such ejection, but damages for the humiliation caused thereby. (Pp. 49-51.)

**2.—Same—Contract—Breach.**

Having done everything entitling him, by contract, to his return transportation, the passenger was not required to accept the refusal of the agent to indorse his ticket as a final breach or refusal to perform the contract made by the company; but he might assume that the carrier had provided, or would provide for the recognition of the contract in some other way. (Pp. 49, 50.)

**3.—Same—Cases Discussed.**

Russell v. Missouri K. & T. Ry. Co., 12 Texas Civ. App., 627, limited. Missouri Pac. Ry. Co. v. Martino, 18 S. W. Rep., 1066, and numerous cases to same effect followed. (Pp. 49, 51.)

Question certified from the Court of Civil Appeals for the Second District, in an appeal from Mitchell County.

*Earnest & Smith,* for appellant.—Any injury suffered by plaintiff, beyond the cost of a railroad ticket from Weatherford to Colorado, and the reasonable cost of his keeping while at Weatherford, which was shown to be $7.45, was the natural and proximate result of the contributory negligence of plaintiff in going upon defendant's train, without having procured a ticket, or having gone upon said train, and being informed by defendant's conductor that said unindorsed drover's contract would not and could not be honored by him, refusing to pay his fare or purchase a ticket, having the means with him whereby either to pay his fare or purchase a ticket. Galveston, H. & H. Ry. Co. v. Scott, 79 S. W. Rep., 642; Russell v. Railway, 12 Texas Civ. App., 627; Texas & P. Ry. Co. v. Cole, 66 Texas, 562; Ft. Worth & D. C. Ry. Co. v. Daggett, 87 Texas, 322; Texas & P. Ry. Co. v. Rea, 27 Texas Civ. App., 549; Texas & P. Ry. Co. v. Dennis, 4 Texas Civ. App., 90.

*Smith & Smith,* for appellee.—We submit that the conflict of opinions which is the basis of the certified question does not in fact exist, our information being that the docket of the Clerk of this Honorable Court does not show that any application for a writ of error was ever filed in the case of Russell v. M. K. & T. Ry. Co., 12 Texas Civ. App., 627; while it does show that writs of error were denied by this court in the cases of Texas & P. Ry. Co. v. Dennis, 4 Texas Civ. App., 90, and Gulf C. & S. F. Ry. Co. v. Rather, 3 Texas Civ. App. 76, in both of which cases the question here certified was involved, and decided adversely to appellant's contention, and this court by its refusal of the applications for writs of error placed its approval upon the determination of the identical question here certified in accordance with appellee's contention, and the ruling of the trial court. And, strangely enough the case of Ry. v. Dennis, ante, was decided by the same tribunal—the personnel of its members being different, however—that now certifies the question to this court. Hence we maintain that, even if any distinction can be drawn between the above-cited Russell case and the case of St. Louis, A. & T. Ry. Co. v. Mackie, 71 Texas, 491, that the doctrine announced in the Rather and the Dennis cases is in effect higher authority than the decision in the Russell case.

WILLIAMS, Associate Justice.—This case is before us upon the following certificate:

"Appellee, T. J. Payne, sued the appellant, the Texas and Pacific Railway Company, in the County Court of Mitchell County, Texas, for damages in the sum of $757.95, because of an ejection from one of appellant's passenger trains between Fort Worth, Texas, and Colorado, Texas.

"The evidence is sufficient to establish the following facts: That appellee in December, 1903, in the capacity of a drover, accompanied a shipment of cattle from Odessa, Texas, to the National Stock Yards, East St. Louis, Illinois, under a written contract with appellant which, among other things, in legal effect, provided that appellee should be transported on his return from Forth Worth, Texas, to Odessa, Texas,

if within fifteen days after the issuance of the contract it should be presented to and endorsed by appellant's agent at Fort Worth. The appellee returned from the National Stock Yards to Fort Worth within the prescribed time, and there presented said contract to the appellant's agent for endorsement, as provided in the contract. Appellee thus details what occurred upon his presentation of the contract at Fort Worth: "I had the contract with me when I reached Fort Worth; at Fort Worth I presented this contract to the freight agent of the Texas and Pacific at Fort Worth, who refused to execute it; my purpose was to get it endorsed, in order to come home on it. Odessa is west of Colorado city, I think about one hundred and twenty miles. When I presented this contract to the agent of the railroad at Fort Worth he told me he could not endorse it at all; his instructions were different, and he could not possibly endorse it under any circumstances; he read me his orders along that line; I told him the train was late and I wanted to get home, and thought possibly my contract did not come under that head, and if he could instruct the conductor of the train to carry me on it, I would be glad if he would do it. That was about all the conversation I had with him; he just refused to do it; I told him the train was late, I don't remember how late, but that if he would instruct the conductor and state the circumstances, he would probably arrange for me to pass on it. He did not say whether he would or would not do this; he did not agree to do it at all." There is no evidence tending to show that appellant's agent at Fort Worth communicated with the conductor of the train, but appellee nevertheless took passage upon the regular passenger train from Forth Worth to Odessa, and remained thereon until the conductor thereof reached him in taking up tickets. The conductor refused to honor the pass because of its want of proper endorsement, and appellee refusing to pay his fare was ejected from the train at Weatherford about ten o'clock at night in the presence of others upon the train and thereby suffered humiliation. Appellee remained in Weatherford until the following day when he resumed his journey, having paid the necessary sum of $1.50 for lodging and meals, and the further sum of $5.95 for a ticket from Weatherford to his home town. Appellee could have paid his passage at the time of his ejectment, having the means to do so, and there is no proof of the value of time lost or of any other actual damage except that which has been stated.

"The trial was before the court without the intervention of a jury, and appellee was awarded a judgment in the sum of $57.45, and the cause is now pending before us on appeal, the sole question presented being whether the judgment in excess of appellee's actual expense of $7.45 at Weatherford, is authorized under the facts.

"In behalf of appellee it is insisted that the following cases among others support the judgment in its entirety, viz.: Texas & Pacific Ry. Co. v. Dennis, 4 Texas Civ. App., 90; St. Louis, A. & T. Ry. Co. v. Mackie, 71 Texas, 491; Missouri Pac. Ry. Co. v. Martino, 18 S. W. Rep., 1066; Gulf, C. & S. F. Ry. Co. v. Rather, 3 Texas Civ. App., 76; and Gulf, C. & S. F. Ry. Co. v. Halbrook, 12 Texas Civ. App., 481. The later case of Russell v. Missouri, K. & T. Ry. Co. of Texas, 12 Texas Civ. App., 627, however, is relied upon as establishing appellant's contention of an excess in the judgment.

"The cases named are considered to be in conflict unless distinguishable, as to which we are not entirely agreed, and we therefore deem it advisable to certify unto Your Honors for determination the question, whether, under the circumstances above stated, appellee was entitled to recover damages caused by the humiliation resulting from his expulsion? That is, whether under the circumstances stated appellee's failure to procure ticket at Fort Worth, or to pay his fare to the conductor when demanded, precludes the recovery for mental injury resulting from his ejection at Weatherford?"

There were differences in the facts existing in the cases cited in the certificate, but whether or not they were such as to reconcile the decision in the case of Russell v. Railway with the others, it is unnecessary to decide. In the application for a writ of error which was made to this court in the Russell case the rulings upon the question which was most like that presented in this certificate were not so assigned as properly to raise that question.

The theory of the defense, in substance, is, that there is no liability for the damages resulting to plaintiff from the ejection, because the action of the agent at Fort Worth in refusing to endorse the contract was a final breach of it from which plaintiff's cause of action then accrued; and that his own act in trying to travel on the contract, after it had been thus repudiated, could not aggravate the damage nor give rise to a new cause of action as for a second breach. If the act of the agent in merely declining to furnish the evidence of the plaintiff's right to transportation is to be treated as a repudiation by defendant of its contract to carry at a time when it was called on to perform it, the conclusion urged might properly follow. But we think the action of the agent did not amount to this. He did not deny plaintiff's right to transportation on the contract, but simply declined to endorse it, because "his instructions were different." This resulted in depriving plaintiff of the complete evidence of his right provided for by the contract, but it did not destroy the right nor necessarily signify to plaintiff that defendant, through other agents in charge of its trains, would not, when applied to, perform the contract. The fact that instructions given to the agent may have taken away his authority in the matter, did not necessitate the conclusion that defendant meant thereby to break its contract, but was consistent with plaintiff's assumption that those in charge of the trains would have adequate instructions and authority to carry out the agreement. Plaintiff's right to the return transportation was evidenced by the written contract, and he had done all required of him to preserve it, the only thing left undone being that which was incumbent on defendant, and the place of that might be supplied in other ways. As defendant had, according to the agent's statement, merely withdrawn his authority to do the designated act, without denying the contract, the fair presumption was, we think, that which plaintiff adopted, that defendant had provided or would provide for the recognition of the contract in some other way. If the principle invoked by defendant could be brought into operation at all, through a mere refusal of such agent to do a thing merely subsidiary to the main contract of carriage, which may be seriously doubted, his action should amount to such an un-

equivocal repudiation of the entire contract as would leave no doubt in the passenger's mind as to the attitude of the carrier. Kilgore v. N. W. Texas Baptist E. Assn., 90 Texas, 139.

Cases have often arisen, under round-trip passenger tickets, in which agents at terminal points have refused, as required by the tickets, to stamp and sign them for the return passage, after the holders had done all required of them, and there is quite a diversity of opinion among the authorities, as to the right of the passenger to attempt to return to his destination upon the ticket, without this evidence upon it, and to recover damages for being ejected from the train; some holding that he has the right and can thus recover; others holding that the refusal to authenticate as required is a breach of the contract of carriage giving rise to the only cause of action the passenger can have, which is to recover damages for such breach, and not for an ejection from a train which he has entered with knowledge that the ticket will not be respected. The language and reasoning of the latter class of authorities would probably sustain the defense here made, but we agree with the doctrine first stated. The reasoning of some of those maintaining the first view seems to concede that the refusal of the agent to authenticate the ticket is a breach of the entire contract of carriage, and the second view is based on that assumption, but we are not prepared to agree to this. It is undoubtedly true that by the stipulation in such a ticket the carrier agrees to have its agent perform the designated act and his refusal to do so is a breach of that stipulation, and it may be that the passenger has the right to treat that as an anticipatory breach of the contract for the return transportation. But this part of the agreement, as it is ordinarily found in such contracts, seems to us to be merely incidental and subsidiary to the contract of carriage, and the breach of it is not necessarily a repudiation by the carrier of its entire obligation. It may still perform its duty to transport. It is not called upon to perform that until the passenger presents himself for transportation, and it is only by a refusal then, it would seem, that there is a breach which the passenger is bound to treat as converting his right into a cause of action for damages. It may be true that the holder of the ticket may treat the refusal to authenticate it as a breach of the contract and claim his damages therefor; but as the time has not arrived for performance of the contract to carry upon the return trip until the passenger enters the conveyance, the carrier may still perform and the passenger therefore may elect to insist upon performance until it is refused when it is due. The general principles governing contract would lead to this conclusion, unless it be true that the authentication of the ticket is to be regarded as a part of the performance of the contract for the return passage, and we can see no good reason why it should be so treated. It may be broken and the parties may still carry out the substantial part of their agreement. Greenwall Theatrical Co. v. Markowitz, 97 Texas, 485.

The opposing authorities assume that there is something in the nature of transportation by rail and of the necessary regulation of carriage by means of tickets that controls the question. That regulations requiring the purchase and exhibition of tickets by passengers while being carried are reasonable and valid is well settled, but tickets and writings like those we are considering contain a special contract and express

their own obligation. They bind the carrier, when the holder has done all required of him, to have its agent take the action called for by the contract and to furnish transportation. If the complete evidence of the right to transportation provided for by the particular contract is not created because of the refusal of the agent to furnish it, the carrier is in no condition to exact it and is not discharged from the undertaking to carry. When the holder has done all he can to perform the condition precedent imposed upon him his right to transportation is complete, and he has in the ticket all the evidence which the contract exacts of him to furnish, that which is lacking being only the evidence which the carrier has undertaken to furnish for the information of its employes. The case is not one in which the passenger has failed to comply with reasonable regulations concerning tickets, but one in which he has complied as far as was in his power. Other regulations of the carrier may be such that the default on its part may naturally lead to a breach of the obligation to transport by other agents ignorant of the facts, but we do not see the justice in holding that the passenger must assume, merely because the carrier is in default in such an incident, that it will not perform the substantial part of the contract. The reasoning upon the subject sometimes makes the question turn upon the culpability of the conductor in ejecting, which seems to us to be entirely too narrow a view of the subject. The act of the conductor is to be treated as that of his employer and, thus viewed, is wrongful because the employer has no right under such circumstances to have the passenger ejected.

The two classes of authorities are fairly represented by the Martino case cited in the certificate; Head v. Georgia Pac. Ry. Co., 79 Ga., 358; Southern Ry. Co. v. Wood, 55 Law Rep. Ann., 536; Morse v. Southern Ry. Co., 102 Ga., 302; McGhee v. Reynolds, 117 Ala., 413, s. c. 129 Ala., 540, and in other cases therein cited; other authorities are given in 6 Cyc. Law & Proc., 557-8.

The question whether or not plaintiff after getting on the train ought to have paid his fare in order to prevent expulsion is in principle decided in the Mackie case referred to in the certificate.

We therefore answer that plaintiff was entitled to recover damages sustained from the expulsion and was not required either to purchase a ticket at Fort Worth or to pay his fare on the train.