ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY ET AL. v. MRS.

R. A. LUCAS.

No. 2225.  Decided March 27, 1912.

**1.—Carriers of Passengers—Round Trip Ticket—Validation for Return.**

The passenger who complies with his contract by presenting his ticket for validation for the return trip as required by its terms, does not lose his right to transportation by neglect or refusal of the carrier's agent to do what is necessary to evidence his right. He is not bound to treat such refusal as a final breach of the contract by the carrier, but may enter the train, and, if put off because his ticket was not validated, may recover damages for the ejection. (P. 86.)

**2.—Same—Refusing Admission to Train.**

The right of one who has a valid contract for transportation to recover damages for being put off the train is not affected by the manner in which he gained admission to it. Where, being refused admission to the train by the gatekeeper because the company's agent had wrongfully refused to stamp his return ticket, he gained admission by purchasing a ticket for a nearby station, and, presenting his unstamped ticket to the conductor, was put off the train at a way station, he could recover damages for such unlawful ejection. (Pp. 87-90.)

**3.—Case Followed.**

Texas & P. Ry. Co. v. Payne, 99 Texas, 46, followed.  (P. 90.)

Question certified from the Court of Civil Appeals, First District, in an appeal from Harris County.

*Terry, Cavin & Mills, A. H. Culwell* and *Rodman S. Crosby*, for appellant, Gulf, C. & S. F. Ry. Co.—The ticket is the sole evidence of a passenger's right to transportation. The plaintiff, not possessing a valid ticket, and refusing to pay her fare, can not complain of her ejection. 28 Am. & Eng. Ency., pp. 156, 158; Hall v. Hemphis, etc., Ry. Co., 9 Am. & Eng. Ry. Rep., 348; Railway Co. v. Bennett, 50 Fed., 496; Russell v. Missouri, K. & T. Ry. Co., 12 Texas Civ. App., 627.

Defendants, in their answers, specially plead that the plaintiff, in order to get past the gateman at the depot in Houston, purchased and presented to him a ticket to Liberty, and that she knew at the time

she boarded the Texas & N. O. train, her coupon ticket would not be honored for transportation. Abundant evidence in support of this plea was offered. It was prejudicial and reversible error, therefore, for the court to refuse a charge upon an issue so raised. St. Louis S. W. Ry. Co. v. Rose, 93 S. W., 1105; Consumers' C. Oil Co. v. Wilkins, 80 S. W., 870; Consumers' C. Oil Co. v. Gentry, 35 Texas Civ. App., 445.

The instructions refused were correct statements of the law on an issue properly raised, and should have been submitted to the jury. Railway Co. v. Cole, 66 Texas, 562; Russell v. Missouri, K. & T. Ry. Co., 35 S. W., 724, 12 Texas Civ. App., 627; International & G. N. Ry. Co. v. Goldstein, 2 App. Civ. Cas., 275; Pouilin v. Canadian Pac. Ry. Co., 52 Fed., 197.

*Baker, Botts, Parker & Garwood, Lane, Wolters & Storey,* and *Wm. A. Vinson,* for appellant, Texas & N. O. Ry. Co.—That when a carrier breaches a contract of carriage it becomes responsible for the proximate results of such act, but not for consequences which could and should have been avoided by the passenger, was expressly ruled in the case of Russell v. Missouri, K. & T. Ry. Co. of Texas, 12 Texas Civ. App., 627, a writ of error being refused by this court.

*L. E. Blankenbecker* and *Norman Atkinson,* for appellee.—As the ticket was a round-trip coupon ticket, and as the undisputed evidence showed that the agent at destination failed and refused to validate said ticket, and that the Texas & N. O. Ry. Co. had recognized said ticket by transporting plaintiff on the going trip, and as plaintiff explained to the agents in charge of the train of the Texas & N. O., before ejection, why her ticket was not signed and stamped, plaintiff was entitled to ride upon said ticket over the Texas & N. O. Railway Company's line, and her ejection by its agents was wrongful. Railway Co. v. Payne, 99 Texas, 46; Railway Co. v. St. John, 35 S. W., 501; Railway Co. v. Jones, 38 Texas Civ. App., 129; Railway Co. v. Lynch, 43 Texas Civ. App., 121; Railway Co. v. Lee, 123 S. W., 154; Railway Co. v. Harris, 91 S. W., 211 (Tenn.).

The ticket is not the sole evidence of a passenger's right to transportation. The defect in plaintiff's ticket was due to no fault of her own, but to the appellant's negligence, and she need not pay her fare to prevent expulsion, but may stand upon her original contract. Railway Co. v. Halbrook, 33 S. W., 1028; Railway Co. v. Payne, 99 Texas, 46; Railway Co. v. Barlow, 30 S. E., 732, 733; Railway Co. v. Mackie, 71 Texas, 491; 1 Sutherland on Damages, 152, notes 153-159.

Whether or not the plaintiff, in order to get by the gateman in Houston, purchased and presented to him a ticket to Liberty, and whether or not she had been informed and knew, at the time she boarded the Texas & N. O. Railway Company's train, that her coupon ticket would not be honored for transportation, and whether or not she could have got on said train by presenting her homeseeker's ticket unvalidated, were each and all irrelevant and immaterial to any issue in the case, and it was the duty of the trial court not to present such

issues to the jury. Railway Co. v. Martino, 18 S. W., 1066, 2 Texas Civ. App., 634; Railway Co. v. Mackie, 9 S. W., 451, 71 Texas, 491; Railway Co. v. Copeland, 17 Texas Civ. App., 55.

MR. JUSTICE DIBRELL delivered the opinion of the court.

Certified question from the Court of Civil Appeals of the First Supreme Judicial District. The statement and question are as follows:

"This is a suit instituted in the County Court by Mrs. R. A. Lucas against the Atchison, Topeka & Santa Fe Railway Company and the Texas & New Orleans Railroad Company to recover damages for her ejection from one of the passenger trains of the latter company. A trial resulted in a verdict and judgment for plaintiff for $500. Upon motion for a new trial the court suggested a remittitur of $100, which was filed, and thereupon the judgment was finally entered for $400. From the judgment, their motion for a new trial having been overruled, the defendants appeal.

"On December 3, 1907, appellee purchased at Atlanta, Georgia, from the Atlanta & West Point Railway Company, a ticket to Oklahoma City and return over the issuing road and several connecting, lines, including the Texas & New Orleans Railroad and the Atchison, Topeka & Santa Fe Railroad, the latter road being the terminal line in her route. The ticket was issued with the following conditions printed thereon:

" 'First. In selling this reduced rate ticket for passage over other lines, and in checking baggage on it, this company acts only as agent, and is not responsible beyond its own line.

" 'Fourth. This ticket shall not be good for return passage unless the holder identifies him or herself by signature on the back thereof, and otherwise, as original purchaser, to the satisfaction of the agent of terminal line at destination of ticket, and when officially signed and stamped by said agent, this ticket shall then be good for return passage of the original purchaser only, leaving destination only on date so stamped and canceled on back, provided return passage is made to original starting point within the number of days indicated under head of return transit limit.

" 'Ninth. That no agent or employe of any line over which the purchaser is entitled to travel by the terms of his ticket has any power to alter, modify or waive in any manner any of the conditions named in this contract.

" 'In consideration of the reduced rate at which this ticket is sold, I, the original purchaser, hereby agree to be governed by all the conditions, as stated above, and by all other reasonable rules and regulations of any of the companies over whose line it reads, constituting part of this contract, and that I will not seek to hold any of such companies liable for damage resulting to me from any statement of any employe thereof not in accordance with the terms of this contract, as expressed upon this ticket.

" 'To Purchaser: Read the contract, and take notice that the return part of this ticket must be stamped and your signature witnessed in the manner prescribed before it will be honored for passage.'

"Upon this ticket appellee was carried over the several lines to

Oklahoma City. On or about the 17th of December, desiring to return to her home at Atlanta, it is alleged in the petition and testified by appellee, that she presented this ticket to the agent of the Atchison road at Oklahoma City in order that she might be identified and the ticket validated by said agent for her return trip; that she called upon the agent to stamp the ticket, and insisted that he do so, in accordance with the conditions thereof, but the agent declined to sign and stamp the ticket and assured appellee that the proper place to have this done was at Houston, where she was going to stop over. Appellee then proceeded over the Atchison, Topeka & Santa Fe and the Gulf, Colorado & Santa Fe lines to Houston, no objection being made on either line to the ticket. When she presented her ticket to the agent of the Texas & New Orleans Company at Houston to be validated by signing and stamping, the agent refused to do this, telling her that he had no authority to do so, but it should have been done at Oklahoma City by the agent of the Atchison road. Appellee explained to him that she had tried to have this done, telling him of the circumstances stated above, but the agent at Houston persisted in his refusal on the ground of his want of authority. Appellee then boarded the train of the Texas & New Orleans Railroad, and when the conductor called for her ticket produced the unvalidated return trip ticket referred to. The conductor refused to accept it for passage, although she explained to him her efforts and failure to get it validated, and told her he would have to put her off unless she paid fare. This she refused to do, as she had not the money, and the conductor accordingly put her off at Dayton, a station a short way out of Houston, using no more force than was necessary and acting without any harshness, as expressly found by the jury. Appellee remained at Dayton, according to her testimony, about two hours; according to the testimony of trainmen, about twenty minutes, when she caught a train for Houston and returned to that point. She remained there a day or two and her ticket having been fixed by the general passenger agent of the Texas & New Orleans Company, she left for her home. Appellee testified that the weather was bad when she was put off; that she was unwell, and when she returned to Houston she had to send for a doctor; that she had to borrow money to pay her expenses there, etc. She also testified that she was very harshly treated by the conductor in ejecting her from the train at Dayton, but by special finding, the verdict of the jury negatived this. Testimony was introduced by appellants which, if true, showed that appellee was assured by the ticket agent at Houston that she could not be allowed to ride on this unvalidated ticket; that she tried to pass through the gate to the train shed, which was necessary to gain access to the train, where she was required to exhibit her ticket; that she showed to the gateman her return trip ticket, which he refused to accept, and refused to let her pass through the gate; that she then bought a ticket to Liberty, a station on the line of the Texas & New Orleans Company, a few miles beyond Dayton, where she was put off, and upon this ticket she was allowed to pass through the gate and board the train.

"In reversing the judgment and remanding the cause, as one of

the grounds therefor, it was held by this court that if the evidence above referred to, that appellee presented her unvalidated ticket to the agent of the Texas & New Orleans Railway Company at the gate, for the purpose of gaining admittance to the train, and was refused as stated, and afterwards gained access through the gate to the train by means of a local ticket to Liberty purchased by her for that purpose, such facts would be a bar to her recovery of damages for her ejection from the train, no more force having been used than necessary by the conductor for that purpose, and that proper charges, requested by appellants, presenting this issue should have been given. Such charges were refused and the issue was not covered by the court's charge. Upon motion for rehearing it is insisted by appellee that such ruling is in conflict with the opinion of the Supreme Court in Texas & P. Ry. Co. v. Payne, 99 Texas, 46, 70 L. R. A., 946, 122 Am. St., 603. We are in some doubt as to the correctness of our ruling in view of what is said in the opinion referred to, and inasmuch as our judgment is final we deem it proper to certify to your Honorable Court the following question:

"Question. Would the facts referred to bar the right of appellee to recover damages for her ejection from the train in a proper manner by the conductor, upon her failure to pay fare or to present any other ticket than the unvalidated ticket upon which she had been refused admission to the train through the gate?"

It is the settled law of this State that the passenger who complies with his contract does not lose his right to transportation because of the neglect or refusal of the agent of the carrier to do something that is necessary to evidence the passenger's right to use such transportation. Under such circumstances the passenger is not required to procure other transportation, but may rely solely upon the contract made with the carrier. Making a practical application of the law to the facts of this case, as made by the certificate of the Court of Civil Appeals, the appellee having purchased a return ticket in Atlanta, Ga., to Oklahoma City, and return over the issuing road and several connecting lines, including the Texas & New Orleans Railroad and the Atchison, Topeka & Santa Fe Railroad, presented herself to the proper agent at Oklahoma City for identification and applied to such agent to have her ticket validated in compliance with the provisions of her contract with the railroad companies. The agent at Oklahoma City refused to make the validation required of him without any legal excuse, telling appellee that the proper place to have her ticket validated was Houston, Texas. She was carried on her ticket unvalidated without objection from Oklahoma City to Houston over the Atchison, Topeka & Santa Fe and Gulf, Colorado & Santa Fe roads. At Houston she presented her ticket to the proper agent and requested its validation, relating what had taken place at Oklahoma City in an effort to secure such validation, but the agent at Houston refused the validation denying his authority to do so. Under these circumstances the law gave appellee the right to be transported over the railroads of appellants without having her ticket validated. She had done all that was required of her under the contract and was without fault. Missouri Pac. Ry. Co. v. Martino, 2 Texas Civ. App., 634, 18

S. W., 1069; Gulf, C. & S. F. Ry. Co. v. John, 13 Texas Civ. App., 257, 35 S. W., 501; Ft. Worth & R. G. Ry. Co. v. Jones, 38 Texas Civ. App., 129, 85 S. W., 37; St. Louis, A. & T. Ry. Co. v. Mackie, 71 Texas, 491; Texas & P. Ry. Co. v. Payne, 99 Texas, 46, 70 L. R. A., 946, 122 Am. St., 603.

This brings us nearer the question to be answered. Appellee was assured by the ticket agent at Houston that she would not be permitted to ride on her unvalidated ticket, and she exhibited the ticket to the gateman, who refused to accept it and to let her pass through the gate to gain access to the train. She then purchased a ticket to Liberty and was permitted to pass through the gate by virtue of this ticket, by which means she gained access to the train, from which she was afterwards ejected. Did these facts present a valid defense to appellee's action for damages resulting from her ejectment under such state of case? We think they clearly did not present any defense to appellee's cause of action. The certificate does not disclose the authority of the gateman, who, in the first instance, refused appellee passage through the gate to the train, and we are left to infer that his business was to pass such persons as possessed tickets prima facie valid and entitling such person to transportation on the train to which access was sought.

We think it immaterial in what manner appellee gained access to appellant's train. If she had valid transportation, she had the right to enter the train and demand a fulfillment of the contract upon the part of the carrier. From the facts found it is clear appellee had a valid ticket which entitled her to be carried over appellants' roads and their connecting lines from Houston to Atlanta, Georgia. We are unable to discern any valid reason why the device resorted to by appellee to gain entrance to the train could in any manner affect her right to recover damages for her wrongful expulsion therefrom. The question of good faith does not arise where the transportation is valid and the entrance to the cars is for the bona fide purpose of being carried to destination. This rule is stated by Mr. Hutchinson on Carriers, volume 2, page 1102, section 963 (3d ed.), as follows: "And when a person has paid or tendered the proper compensation to the carrier, and the carrier has accommodations and there is no legal objection to receiving him as a passenger, the right to enter the car is not merely one of private contract, but is also one of public law, and the duty will rest upon the carrier to admit him as a passenger. If, after having secured his right to enter, he is refused admittance, he may make reasonable effort to exercise his right to enter, and if his conduct does not transgress the limit of reasonable effort, and is not *mala fide* for the purpose of provoking resistance or insult, any tort against his person by the agents of the carrier resulting from a refusal to admit him to the cars will be actionable, and the accompanying indignity will be a legitimate element of compensatory damages."

The text above quoted seems to rest upon the case of Runyan v. Central R. Co. of New Jersey, 65 N. J. L., 228, 47 Atl., 422, which furnishes a precedent for our ruling in the case at bar. We desire to state an extract from the New Jersey case from which the facts of

the case as well as the principle announced therein appear, as follows: "The last point to be noticed relates to the measure of damages. The objections urged are that the judge permitted the jury to give the plaintiff damages for the indignity which he suffered by being excluded from the cars in the presence of many onlookers, and refused to charge that damages could not be awarded for the resistance made to plaintiff's efforts to board the train after notice that he could not enter. The testimony tended to prove that the plaintiff had a ticket entitling him to ride from New York to Elizabeth; that with this he crossed the ferry to the Jersey City station, and then was forbidden by the defendant's agents to enter the cars with his packages; that nevertheless he attempted to walk through the gate to the cars, but found his passage blocked by the men, and then desisted. Shortly afterwards he walked to the Communipaw station, and there bought from the company a ticket to Newark, and when a Newark train came along he quickly got upon the platform of one of the cars, but was knocked off by some of the company's employees at the station; he then hurried to another car, where the conductor of the train endeavored to make room for him to board the train, but the others interfered, and the train left without him. He then bought of the company another ticket to Elizabeth, but when the train arrived, two or three policemen appearing, he refrained from further effort, and departed. Under these circumstances, we think, the resistance made to the plaintiff and the indignity suffered by him were proper matters for consideration by the jury on the question of damages.

"The verdict in favor of the plaintiff implies that he had a legal right to enter the company's trains with the packages in his hand, by virtue of the ticket which he had purchased. This right rested, not merely on private contract, but on public law, which bound the defendant as a common carrier. The plaintiff was not necessarily obliged to forego his right because the company's agent told him to do so. He was entitled to make reasonable effort to exercise his right, and if the jury determined that his conduct did not transgress the limit of reasonable effort, and was not mala fides for the purpose of provoking resistance or insult, then the wrong done could not be attributed to misbehavior on his part. The resistance interposed by the defendant's agents constituted a tort against the plaintiff's person, and therefore was actionable, and in such cases it is settled in this State that the accompanying indignity is a legitimate element of compensatory damages."

The contention that when the gateman refused to accept or approve the ticket and permit appellee to pass through the gate to enter appellant's car such refusal was on the part of appellant a final breach and repudiation of the entire contract is, we think, not tenable. The rule as we understand it is essentially different from the one contended for by appellant as above set out. In order to determine whether a contract of carriage has been finally and entirely repudiated it is necessary that the holder of such a contract enter the conveyance of the carrier and present himself for transportation. The time for the performance of the contract has not arrived until this has been done. The

matters and things agreed to be performed by the carrier through its agents in order to have the ticket validated, as well as such implied obligations growing out of an inspection of the ticket by the gateman were but incidental and subsidiary obligations the violation of which while giving a cause of action are not such as to bar appellee's cause of action for the ejectment and indignity incident thereto, for the reason that the contract was a continuing one and could not be finally and entirely repudiated until it was presented for fulfillment and by the proper authority denied. It is conceded that a cause of action arose to appellee when she presented a valid ticket to the gateman and was refused access through the gate to the train on which she had the right to ride, but such cause of action, while incident to the contract, was more the violation of a public law than of a private right. The cause of action would not have been for a repudiation of the contract in its entirety but for·a denial of a subsidiary right expressly given or implied from the contract. This being true it can not be said that a cause of action growing out of the failure to perform such subsidiary obligations takes the place of and bars the cause of action arising out of a refusal to perform the contract of carriage when presented to the final arbiter of the validity of such a contract.

Under the facts of the certificate there is nothing tending to show that the gateman had any authority to repudiate the contract and deny appellee the right of transportation on the unvalidated ticket. If the gateman was clothed with such power it would seem that the train conductor or auditor would have no power to eject any person for having an invalid ticket where such ticket had been issued by the gateman. Whatever might be considered the legal effect of such authority in the gateman, the record discloses no such authority and the question is not properly before us.

The question under consideration is not one of first impression when considered in its substantive relation to like contracts. The rule as we have stated it above is that laid down by the text books. In Hutchinson on Carriers, volume 2, page 1219, part of section 1054, (3d ed.), this doctrine is thus stated: "Cases have often arisen under 'round trip' passenger tickets in which agents at terminal points have refused, as required by the ticket, to stamp and sign them for the return passage after the holders had done all required of them; and there is quite a diversity of opinion among the authorities as to the right of the passenger to attempt to return to his destination upon the ticket without this evidence upon it, and to recover damages for being ejected from the train, some holding that he has a right and can thus recover, others holding that the refusal to authenticate, as required, is a breach of the contract of carriage giving rise to the only cause of action the passenger can have, which is to recover damages for such breach, and not for an ejectment from the train which he has entered with knowledge that the ticket will not be respected. The weight of authority and better view seems to be that the agreement of the carrier to have his agent perform the designated act is merely incidental and subsidiary to the contract of carriage, and the breach of it is not necessarily a repudiation by the carrier of its entire obligation. It may be true that the holder of the ticket may treat the refusal to authenticate

it as a breach of the contract, and claim his damages therefor, but as the time has not arrived for performance of the contract to carry upon the return trip until the passenger enters the conveyance, the carrier may still perform, and the passenger, therefore, may elect to insist upon the performance until it is refused when it is due.''

We are not able to distinguish the case at bar from the case of Texas & P. Ry. Co. v. Payne, 99 Texas, 46. The legal questions are practically the same, and there are not facts different in the one from the other that would invoke a different rule of law. In the Payne case the contract was required to be validated by the endorsement of the freight agent at Fort Worth, who refused to make such endorsement when presented to him by Payne, denying his authority so to do. The holder of this contract unvalidated took the train at Fort Worth for Odessa, and was, by the agent of the railroad company, ejected at Weatherford. In bar of Payne's right to recover damages for his unlawful expulsion it was urged he could not recover because his cause of action accrued and his contract was repudiated when the agent refused to endorse it. But in reply to this contention Judge Williams, speaking for the court, said: ''It is undoubtedly true that by the stipulation in such a ticket the carrier agrees to have its agent perform the designated act and his refusal to do so is a breach of that stipulation, and it may be that the passenger has the right to treat that as an anticipatory breach of the contract for the return transportation. But this part of the agreement, as it is ordinarily found in such contracts, seems to us to be merely incidental and subsidiary to the contract of carriage, and the breach of it is not necessarily a repudiation by the carrier of its entire obligation. It may still perform its duty to transport. It is not called upon to perform that until the passenger presents himself for transportation, and it is only by a refusal then, it would seem, that there is a breach which the passenger is bound to treat as converting his right into a cause of action for damages. It may be true that the holder of the ticket may treat the refusal to authenticate as a breach of the contract and claim his damages therefor; but as the time has not arrived for performance of the contract to carry upon the return trip until the passenger enters the conveyance, the carrier may still perform and the passenger therefore may elect to insist upon performance until it is refused when it is due.''

The fact that appellee was notified by the agent at Houston that she could not ride on the unvalidated ticket and the fact that she was denied admission to the yards by the gateman for the reason that the ticket presented was not validated takes nothing from the force of the rule laid down in the Payne case, and adds no strength to the position assumed by appellant.

Judge Ramsey not sitting.